THE STATE OF OHIO, APPELLEE, *v.* ROE ET AL., APPELLANTS.

[Cite as State v. Roe (1971), 26 Ohio St. 2d 243.]

(No. 70-427—Decided June 23, 1971.)

244

Mr. Lee C. Falke, prosecuting attorney, and Mr. Leonard P. Zdara, for appellee.

Mr. Ted W. Rice, for appellants.

CORRIGAN, J.  The first of two issues raised by appellants is of transcendent importance.  That issue is whether a police officer can be compelled to disclose the identity of an informer in a grand jury proceeding where the inquiry is not directed to the determination of the possible guilt of a specified person, but is a general quest as to who might have committed a crime.

On the one side of the problem before us is the scope of the investigative power of the grand jury under R. C. 2939.08 to inquire of and present all offenses committed within the county.  The historic traditions of the grand jury, and its extensive powers of investigation, cannot be

stressed too much. Likewise, there is the corresponding duty of the citizenry to respond to grand jury subpoena and give testimony. However, the general proposition of state authority reposed in the grand jury is necessarily tempered by constitutional prohibitions and other exceptional circumstances. See *Hale* v. *Henkel* (1906), 201 U. S. 43; *United States* v. *Bryan* (1950), 339 U. S. 323; *Blair* v. *United States* (1919), 250 U. S. 273; *Caldwell* v. *United States* (C. C. A. 9, 1970), 434 F. 2d 1081.

The constitutional prohibitions pose conflicts between First Amendment interests, particularly relating to freedom of the press, and grand jury authority. This First Amendment problem has been resolved by the court in *Caldwell, supra,* in which the Circuit Court of Appeals approved the following ruling of the District Court:

" 'When the exercise of the grand jury power of testimonial compulsion so necessary to the effective functioning of the court may impinge upon or repress First Amendment rights of freedom of speech, press and association, which centuries of experience have found to be indispensable to the survival of a free society, such power shall not be exercised in a manner likely to do so until there has been a clear showing of a compelling and overriding national interest that cannot be served by any alternative means.' "

The appellate court agreed with the District Court that the First Amendment requires this qualified privilege.

Similarly, the authority of the grand jury to exercise testimonial compulsion is tempered by the qualified privilege of a police officer witness, in whom is reposed the identity of police informer, to refuse to disclose such identity. This qualified privilege is discussed in *Roviaro* v. *United States* (1957), 353 U. S. 53, as follows:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *Scher* v. *United States,* 305 U. S. 251, 254; *Re Quarles,* 158 U. S. 532; *Vogel* v. *Cruaz,* 110

U. S. 311, 316. The purpose of the privilege is the further-ance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and, by preserving their anonymity, encourages them to perform that obliga-tion.

"The scope of the privilege is limited by its under-lying purpose. Thus, where the disclosure of the con-tents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been dis-closed to those who would have cause to resent the com-munication, the privilege is no longer applicable.

"A further limitation on the applicability of the priv-ilege arises from the fundamental requirements of fair-ness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and help-ful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to estab-lish probable cause. In these cases the Government has been required to disclose the identity of the informant un-less there was sufficient evidence apart from his confi-dential communication.

"We believe that no fixed rule with respect to dis-closure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of in-formation against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the inform-er's testimony, and other relevant factors."

Later, in March 1967, the United States Supreme Court, in *McCray* v. *Illinois* (1967), 386 U. S. 300, held that federal officers need not disclose an informer's identity in applying for an arrest or search warrant.

Ohio has a long history of recognition of the so-called "informer privilege." In paragraph two of the syllabus in *State* v. *Beck* (1963), 175 Ohio St. 73, the principle was stated:

"It is not reversible error on the part of a trial court to refuse to order the disclosure of the identity of an informer, whose information led in part to the apprehension and arrest of an accused person, where such disclosure would not be helpful and beneficial to the accused in making a defense to a criminal charge lodged against him."

In the opinion in that case, the court said, at page 76:

"Did the court err in refusing to compel the disclosure of the name of the informer? Defendant contends that he was entitled to such disclosure to test the credibility of the informer and the reliability and sufficiency of the evidence on which the officers proceeded.

"As already noted, law-enforcement officers sometimes base a part of their activities on information supplied them by informers, and the only way to verify the reliability of such information is to make use thereof. Informers often frequent the vicinity where crime is planned, and the revelation of an informer's name would not only destroy his access to information concerning criminal activities but might also result in his sudden demise, thereby discouraging others from becoming informers.

"For many years, sound policy has dictated that the names of informers be kept secret. Only in an instance where an informer's identity would be beneficial and helpful to a defendant is there any basis for requiring disclosure. Here the officers acted on the information imparted by the informer plus additional knowledge already in their possession. The revelation of the name of the informer and the information supplied by him would not alter the fact of defendant's guilt. And a mere desire to test the credibility and reliability of the informer is hardly

a compelling consideration in the circumstances narrated.

"This case is distinguishable from that of *Roviaro* v. *United States,* 353 U. S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, where the informer not only gave information but took an active part personally in trapping and apprehending the offender. No such situation is evident here.

"Finally, nothing in the present case shows that the disclosure of the name of the informer would have been of any real value to defendant. He made no active defense, and by stipulation the case was submitted to the court solely on evidence furnished by the police and introduced at the hearing on the motion to suppress."

There is a paucity of cases in which the question of the "informer's privilege" has arisen in the context of investigation by the grand jury. The closest in factual pattern to our instant situation is *Davis* v. *Circuit Court of Pulaski County* (1958), 244 Ark. 142, 424 S. W. 2d 149. The police officer witness in that case was adjudged to be in contempt when he refused to tell the grand jury the name of his informer who had evidence of certain gambling operations. The Supreme Court of Arkansas reversed the contempt order and reasoned that the privilege of a police officer in refusing to reveal the source of his information in criminal investigations was based on public policy and its availability depended upon the facts and circumstances of the particular case (citing *Roviaro, supra,* and *McCray, supra*).

Applying the available law to the facts in our present case, it is our determination these two appellants, adjudged contemners, were entitled to invoke the informer's privilege under the circumstances of this case where the grand jury inquiry was not directed to the guilt of a particular person and it does not appear from the record before us that such disclosure would be helpful and beneficial to an accused in making a defense to a criminal charge against him; and further, that they may not be compelled to disclose the identity of their informer to the grand jury.

Accordingly, the judgment of the Court of Appeals is reversed and the cause is remanded to the Common Pleas Court, with instructions that the judgment of contempt against each of these two appellants and the order directing each of them to disclose the name of their informer to the grand jury be vacated and set aside.

*Judgment reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, DUNCAN, STERN and LEACH, JJ., concur.