294

THE STATE OF OHIO, APPELLEE, *v.* PHILLIPS, APPELLANT.

(No. 70-407—Decided July 21, 1971.)

296

*Mr. Lee C. Falke,* prosecuting attorney, *Mr. James T. Burroughs* and *Mr. Paul R. Leonard,* for appellee.

*Messrs. Rion, Rion & Rion* and *Mr. Paul W. Rion,* for appellant.

DUNCAN, J. In the Court of Appeals, the appellant raised this assignment of error: "The court sustained the state's objection to questions put to the state's witnesses on cross-examination as to the identity of their informer." The Court of Appeals held that the facts of this case do not require such a disclosure. We reverse.

In our decision in *State* v. *Roe* (1971), 26 Ohio St. 2d 243, Justice Corrigan discussed the value of, and the reasons for the legal genesis of the qualified privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with the enforcement of that law. *Scher* v. *United States* (1938), 305 U. S. 251, 254; *In re Quarles* (1894), 158 U. S. 532; *Vogel* v. *Gruaz* (1884), 110 U. S. 311, 318.

*Roviaro* v. *United States* (1957), 353 U. S. 53, 60, cited in our recent decision in *State* v. *Roe, supra,* well communicates the delicate balancing of our societal interest in the apprehension of criminals with the fundamental fairness that must be extended to those charged with crimes. That balance is so fine that a determination must come only

after a thorough analysis of the facts of each case. Appreciating the fact that the holding in *Roviaro* was a reversal of a conviction under a federal statute, rather than a constitutional decision dictating the course of state law, and therefore not binding on this court, the grasp of the problem and the legal solution in *Roviaro* are persuasive.

This court has pronounced a similar rule. It has been held that the state has the privilege to withhold the identity of an informer, unless the disclosure would be helpful and beneficial to the accused in making a defense to a criminal charge lodged against him. *State* v. *Beck* (1963), 175 Ohio St. 73 (reversed on other grounds, 379 U. S. 89). Language somewhat similar is used in *Roviaro, supra,* where it is stated, at page 60: "Where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."

It is interesting to note the standards used in *Roviaro* when evaluating the need for disclosure of an informer's identity as a defensive necessity. At page 62 therein the opinion states:

"Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

Further at page 63, in discussing the import of the informer's potential value to the trial, the court said, "The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the defense."

In the case at bar, after the decision of the Court of Appeals, Phillips remains convicted of the unlawful possession of narcotics for sale, and conspiring to possess narcotics.

Two of the steps in the ladder of circumstances which can reasonably be said to provide the jury with the inference that appellant was in possession of narcotics for sale,

is the evidence of the two "buys" of narcotics by the informer. There is no specific evidence identifying any person from whom the informer purchased drugs on the afternoon of October 4, 1967. Pertaining to the afternoon sale, the trier of the facts knew only that the informer entered the motel, returned to the police officers, stated that he had been required to "shoot" the narcotics in the motel, and that appellant had in his possession five dollars of the marked money with which the purchase was consummated. Appellant was connected with this particular sale of narcotics only through the activity of the informer. The presence of other facts in evidence from which inferences could be drawn, such as that appellant was involved in possession of narcotics for sale, does not lessen the impact of the evidence of the afternoon sale.

However, a key part of the state's case against appellant hinged upon his possession of "marked" money which the informer allegedly used for the purchase of narcotics. That being the case, the examination of the informer would be relevant, and could well have been extremely helpful to Phillips.

In this case, the informer was the sole witness to the claimed sales of narcotics. He had the knowledge which might have been helpful to Phillips, who was not shown by the evidence to have been present at either sale.

In *State* v. *Beck, supra* (175 Ohio St. 73), Judge Zimmerman, in distinguishing *Roviaro* v. *United States, supra* (353 U. S. 53, 77), used this language: "This case is distinguishable from that of *Roviaro* v. *United States*, 353 U. S. 53, 1 L. Ed. (2d) 639, 77 S. Ct., 623, where the informer not only gave information *but took an active part personally in trapping and apprehending the offender.*" (Emphasis added.) A similar basis of distinction of the instant case from *Beck* exists.[1] Unlike the *Beck* fact pattern, in this case the informer personally took an active part in the

---

[1]In *State* v. *Beck*, 175 Ohio St. 73, information was given police by an informer that defendant would be in a certain locality at a certain time pursuing his unlawful activities.

transaction which led to appellant's apprehension. Moreover, appellant presented an active defense.[2]

Knowledge of the transactions, in which the informer personally participated, is relevant to providing appellant with a fair determination of his guilt or innocence. The disclosure of his identity is necessary to accomplish this purpose.

In the Court of Appeals, appellant claimed error when the trial court did not dismiss Patty Amos as a codefendant. She was dismissed, however, at the conclusion of the state's case for the reason that she was 17 years of age. Even if error, and we make no such finding, we find no prejudice to Phillips. She did not testify, although she was present in the courtroom, which fact does not indicate prejudice to appellant.

In the Court of Appeals, as in this court, appellant submitted that the trial court erred in failing to sustain his motion to suppress evidence claimed to have been found as a result of an illegal search and seizure.

Were the mandates of *Chimel* v. *California* (1969), 395 U. S. 752, retroactive? We would have no difficulty in determining that the search and seizure here were unlawful in that the scope of the search was overbroad as incident to the arrests. But *Chimel* has been held to be only applicable prospectively (*Williams* v. *United States* [1971], 39 L. W. 4365). Consequently, we must examine these facts in the light of an earlier established constitutional standards. The United States Supreme Court has held that the facts of each case must be examined in determining the reasonableness of the search and seizure. *United States* v. *Rabinowitz* (1950), 339 U. S. 56; *Harris* v. *United States* (1947), 331 U. S. 145. Vital, however, to the legality of a warrantless search incident to an arrest is the validity of

---

[2]Although the appellant, Phillips, did not testify at trial, Anna Williams, an employee of the Stewarty Motel, testified for the defense that to her knowledge Phillips had never lived in room 110 and 110A. She also stated that on October 4, 1967, four girls were living in those rooms.

the arrest (*Rabinowitz, supra,* at 64), and the proximity of the area searched to the place where the arrest was made. See, also, *James* v. *Louisiana* (1965), 382 U. S. 36.

The evidence used against appellant was the fruit of a search conducted incident to the earlier arrests of Charles Evans and Patty Amos. We cannot hold that these arrests were not based on ''probable cause'' and consequently unlawful. See *State* v. *Beck* (1964), 379 U. S. 89. The informer's actual purchases of narcotics, the first in the afternoon, and the second that night, together with the observation of the informer and the known presence of Evans in room 110, were sufficient to validate warrantless arrests of Evans and Amos.

Pursuant to a lawful arrest, police officers may make a warrantless search of the place of the arrest, if such place is under the control of the accused. *United States* v. *Rabinowitz, supra,* at 61; *Preston* v. *United States* (1964), 376 U. S. 364, 367. Furthermore, because the search was conducted for the purpose of uncovering evidence to be later used against the appellant, this does not make the search illegal. *Warden* v. *Hayden* (1967), 387 U. S. 294; *United States* v. *Rabinowitz, supra,* at 61.

In the instant case, the search conducted was of the premises where Patty Amos was arrested. We cannot hold that a search of these motel rooms, conducted incident to an arrest based on probable cause that narcotics were being sold and possessed, is unreasonable.

Appellant submits that, after he was arrested in room 106, the officers' further searching of rooms 110 and 110A was a second and illegal search. Under the then existing constitutional standards concerning search and seizure, we have not discovered a rule, nor does defendant mention a rule, which requires a search to be completed in any particular time span. If the officers had not completed the search, which it appears they had not, appellant's arrest could not operate to require an otherwise lawful search to be discontinued.

Both in the trial court and the Court of Appeals appel-

ant steadfastly maintained that the evidence discovered as a result of the search by the police officers was the fruit of an illegal search and seizure. In neither court did he specifically raise the constitutional issue that the arrests at the motel, which is not in the city of Dayton, were unlawful in that they were conducted by officers of the city of Dayton. He urges this court on review to decide whether the arrests, and subsequent search and seizures, were legal under those circumstances.

"It is an established rule of long standing in this state that a constitutional question, either in a civil or criminal action, can not be raised in the Supreme Court unless it was presented and urged in the courts below. *Hoffman* v. *Staley*, 92 Ohio St., 505, 112 N. E., 1084; *Cuthbertson* v. *State*, 106 Ohio St., 658, 140 N. E., 941; *Zimmerman* v. *Morris Plan Bank of Cleveland*, 113 Ohio St., 703, 150 N. E., 920; and *Village of Clairington* v. *Althar*, 122 Ohio St., 608, 174 N. E., 251." *State, ex rel. King,* v. *Shannon* (1960), 170 Ohio St. 393, 394.

Also not raised in the Court of Appeals, but raised in this court, are the following nonconstitutional issues: (1) Error for the trial court to have charged the jury on R. C. 1.17, the aider and abettor statute; (2) error in the prosecutor's closing argument; and (3) error in permitting the state to amend the indictment from its original form, charging "possession and control," to charge "possession or control."

In *State, ex rel. Babcock,* v. *Perkins* (1956), 165 Ohio St. 185, the court held, in paragraph three of the syllabus:

"Where an appeal on questions of law is taken to the Supreme Court from the Court of Appeals, which latter court had jurisdiction of the subject matter of and the parties to the action, the Supreme Court will not consider or determine claimed errors which were not raised and preserved in the Court of Appeals."

No rule of law requires this court to review issues not assigned as error or reviewed by the Court of Appeals.

We therefore find no reason why appellant's conviction

under the conspiracy to possess narcotics charge (R. C. 3719.20(H)) should not be allowed to stand. The factors which we have held compel the prosecution to reveal the identity of the informer (for purposes of aiding appellant in his defense of the possession for sale charge) are inapplicable with regard to this offense.

The judgment of the Court of Appeals, so far as it affirmed the conviction of possession of narcotics for sale, is reversed, and the cause is remanded. As to that part of the judgment of the Court of Appeals affirming the conviction for conspiring to possess narcotics, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed in part and reversed in part.*

O'NEILL, C. J., SCHNEIDER, HERBERT, CORRIGAN, STERN and LEACH, JJ., concur.