OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State of Ohio, Appellant, v. Brown, Appellee.

[Cite as State v. Brown (1992),    Ohio St.3d    .]

Criminal law -- Evidence -- Witnesses -- Criminal defendant has constitutional right to compulsory process over a potential witness he believes acted as an informant in his case and whose testimony would be relevant and aid in his defense.

(No. 91-1417 -- Submitted May 12, 1992 -- Decided September 9, 1992.)

Appeal from the Court of Appeals for Stark County, No. CA-8338

On May 10, 1990, an undercover agent from the Stark County Metropolitan Narcotics Unit was patrolling the Belden Avenue area of Canton, Ohio, in an unmarked Metro vehicle, as a part of an operation to purchase illicit drugs on the street. The agent was wearing a body transmitter that permitted surveillance agents nearby to monitor and tape the agent's conversations. Assisting the undercover agent in the operation, and accompanying him in the vehicle, was a female confidential informant.

According to the agent, during the course of the patrol the confidential informant saw an individual on the street and identified him as Cornelius Brown. The surveillance agents captured this identification on tape via the agent's body transmitter. At the time of the purported identification, the agent was not familiar with and could not have identified by name the individual pointed out by the confidential informant.

The individual identified by the confidential informant approached the passenger side of the vehicle and leaned in the window to speak to the agent and the confidential informant. The agent then informed the individual that he wanted to buy a "twenty dollar rock" of crack cocaine. According to the agent, the individual directed him to go around the block and park on the opposite side of Belden Avenue where he would meet them again.

After the agent drove his vehicle to the new location, the individual approached the vehicle again. At that point, the agent handed the confidential informant twenty dollars. The

informant then exited the vehicle and walked with the individual to a location approximately twenty to fifty feet to the rear of the vehicle. By looking intermittently through the rear-view mirror of the vehicle, the agent observed the confidential informant hand the individual a twenty dollar bill and also observed the individual place an item into the informant's hand. The informant then returned to the vehicle and handed the agent a piece of an off-white, solid substance that later proved to be crack cocaine.

Subsequently, Cornelius Brown, defendant-appellee herein, was arrested and charged with one count of aggravated trafficking in cocaine. His indictment included a sentence enhancement specification alleging that he had been previously convicted of a felony drug-abuse offense. On September 4, 1990, Brown's trial before a jury on the charge and specification commenced.

Prior to jury selection, Brown moved for disclosure of the identity of the confidential informant. The state objected to the motion as untimely, and pointed out to the court that Brown had subpoenaed someone whom Brown believed was the confidential informant.

Brown's trial counsel informed the court that the person subpoenaed, "Patty Smith, also known as Patty May," had failed to appear, and argued that Brown had the right to cross-examine her concerning her role in the transaction, if any, the degree of her participation and the accuracy of her identification of Brown. The court deferred ruling on the motion pending its review of the tape containing the confidential informant's alleged identification of appellee and also pending further argument by counsel on the issues raised by the motion.

After jury selection, the presentation of opening statements and the examination of the first witness, the undercover agent, the court recessed the trial for lunch. Prior to reconvening after the lunch recess, the state moved to quash the subpoena of Patty Smith, a.k.a Patty May. The court, over Brown's objection, granted the motion and quashed the subpoena. The tape containing the confidential informant's identification of Brown as the individual involved in the drug transaction was later admitted into evidence, but the jury was instructed to disregard any statements by a third party that purportedly identified Brown as a participant in the drug transaction.

At the end of the trial, the jury found Brown guilty of aggravated trafficking and further found that he had been previously convicted of a felony drug-abuse offense. The court entered a judgment of conviction, sentenced Brown to a term of four to fifteen years, incarceration, and imposed a mandatory fine of $5,000.

Brown appealed to the court of appeals, which reversed his conviction and remanded the cause to the trial court for a new trial. The court of appeals held that the trial court's quashing of the subpoena, without at least an in camera interrogation of the witness summoned by the accused to testify on his behalf (in the belief that she was the confidential informant), violated Brown's right to compulsory process under both the United States and the Ohio Constitutions.

This cause is now before the court pursuant to the allowance of a motion for leave to appeal.

Robert D. Horowitz, Prosecuting Attorney, and Ronald Mark Caldwell, for appellant.

Randall M. Dana, Ohio Public Defender, John A. Bay and Shelly R. Smith, for appellee.

Wright, J.,   This case involves a narrow issue:  whether a criminal defendant has a constitutional right to compulsory process over a potential witness who he believes acted as an informant in his case, and whose testimony, he asserts, would be relevant and aid in his defense.  For the reasons that follow, we uphold the judgment of the court of appeals.

In State v. Williams (1983), 4 Ohio St.3d 74, 4 OBR 196, 446 N.E.2d 779, we last addressed the issue of when the identity of a confidential informant must be disclosed to a criminal defendant.  Quite simply, "[t]he identity of an informant must be revealed * * * when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges."  Id. at syllabus.

In applying Williams to quash the subpoena of the supposed informant, the trial court found that Brown had not made a clear showing that the informant's identity had been known or was known in the community or that the safety of the informant would not be at stake if the court required her presence before the court.  The court found that Brown's need for the informant's testimony was outweighed by concerns for the protection of the identity of the informant.

We agree with the court of appeals that the trial court erred in quashing the subpoena without investigating further whether the person subpoenaed was indeed the confidential informant and, if so, whether her testimony would in any way aid Brown in his defense.  Few rights are more fundamental than the right of an accused to present witnesses on his behalf. Taylor v. Illinois (1988), 484 U.S. 400, 408, 108 S.Ct. 646, 652, 98 L.Ed.2d 798, 810.  The balance the court must strike between the defendant's right to compulsory process and the state's right to protect its informant's identity is so fine that a determination must come only after a thorough analysis of the facts of each case.  See State v. Phillips (1971), 27 Ohio St.2d 294, 297-298, 56 O.O.2d 174, 176, 272 N.E.2d 347, 349-350.  In order to ensure that an accused's right to compulsory process is protected, it thus is essential that a trial court make the necessary inquiries before concluding that the testimony of a witness subpoenaed would not be relevant to the accused's defense.

As we discussed in Williams, "* * * when the degree of participation of the informant is such that the informant virtually becomes a state's witness, the balance swings in favor of requiring disclosure of the informant's identity. Conversely, where disclosure would not be helpful or beneficial to the accused, the identity of the informant need not be revealed."  Williams, supra, at 76, 4 OBR at 197-198, 446 N.E.2d at 781.  Here, the confidential informant was likely the

sole person to witness the entire transaction; as the record reflects, the agent who observed the transaction did not hear the conversation between the informant and appellee, nor was his observation of the informant uninterrupted. It is thus more than mere speculation that the informant's testimony would be relevant, and Brown's assertion that the informant's testimony would have aided his defense cannot be rejected out of hand.

When a defendant has attempted to subpoena, by name, a person who he believes was the confidential informant in his case, a trial court must be firmly convinced that the witness would not in any way assist the defendant's case before quashing the subpoena of such witness. In order to strike a proper balance between the state's interest in the "'* * * furtherance and protection of the public interest in effective law enforcement,'" State v. Roe (1971), 26 Ohio St.2d 243, 246, 55 O.O.2d 480, 482, 271 N.E.2d 296, 298, and a defendant's right under the United States and Ohio Constitutions to have the court compel the attendance of witnesses who may provide testimony that is material and favorable to the defendant, see United States v. Valenzuela-Bernal (1982), 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193, a trial court should enforce the subpoena at least for the limited purpose of conducting an in camera examination of the witness, unless it is manifestly clear that the testimony will in no way aid the defendant. Without making such an inquiry, the court will be unable to determine whether the person subpoenaed is indeed the confidential informant involved in the case, or to determine whether the need for that informant's testimony outweighs the state's interest in preserving the informant's identity. In the instance in which the witness has exculpatory testimony to give, the need for the testimony will generally outweigh the state's interest in identity preservation.

We contrast the situation presented by the present case with that in which the defendant has not attempted to subpoena by name an individual he believes served as a confidential informant, but rather has merely requested the disclosure of the name of the informant. In that instance, as was the case in Williams, the burden is on the defendant to show that the need for the testimony of the informant outweighs the government's interest in keeping the identity of the informant secret. When the defendant demonstrates that the testimony would be vital to establish an element of the crime, or that the testimony would be helpful or beneficial, that burden is fully discharged.

When, as in the case at bar, the government seeks to quash the subpoena, it bears the burden of demonstrating that the informant's testimony would not aid the defendant. In order to properly balance the defendant's right to compulsory process against the government's interest in confidentiality in light of the government's burden, it is essential to a fair trial for both the defendant and the government that the court examine the subpoenaed witness in camera to assess the scope and tenor of his or her testimony before granting or denying the motion to quash. In the event that a defendant is wholly unable to rebut the state's certain argument that the witness's testimony

will not aid the defense,1 or if the state submits evidence that the person subpoenaed is not the informant in the case, the trial court is permitted to forgo this important step.

Because the trial court failed to examine the subpoenaed witness prior to quashing the subpoena, we agree with the court of appeals that the appellee's right to compulsory process was violated and that this cause should be remanded for a new trial. Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

Moyer, C.J., Sweeney, Douglas and H. Brown, JJ., concur.

Resnick, J., concurs in judgment only.

Holmes, J., dissents.

FOOTNOTE:

1 In Williams, supra, the transaction was witnessed in its entirety by a police officer who was in close proximity to the event. At all times, the informant's hands were in plain sight so as to eliminate the possibility that the informant switched the packet given to him by defendant Williams for one containing cocaine. Additionally, the identity of Williams was confirmed by three officers who observed the transaction. Under those facts, which differ considerably from the case at bar, the testimony of the informant would likely not have aided the defendant, unless the defendant had raised a defense of entrapment, which he did not. Thus, even if the defendant in Williams had attempted to compel the testimony of someone he believed was the confidential informant involved in the drug transaction, the trial court could have reasonably concluded, without an in camera examination, that the testimony would not have assisted the defendant.

Holmes, J., dissenting. I am in agreement with the majority that the controlling precedent is State v. Williams (1983), 4 Ohio St.3d 74, 4 OBR 196, 446 N.E.2d 779. However, while paying lip service to the syllabus in Williams, the majority has effectively and in cavalier disregard of the policies underlying that decision, undermined the public's interest in protecting the anonymity of confidential informants. For this reason, I dissent.

Before arriving at our syllabus in Williams, we recognized two competing interests: (1) the state's right in maintaining the anonymity of its informants and (2) the accused's right to confront and cross-examine the state's witnesses. In order to compel disclosure of a confidential informant, we held that the defendant was required to demonstrate either that the informant's testimony is "vital to establishing an element of the crime" or that the testimony of the informant "would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." Id. at syllabus. In either instance, it is incumbent on the defendant to make the requisite specific showing. Properly applied, Williams places the burden on the defendant to oppose the prosecution's efforts to quash a subpoena by demonstrating that his or her interest in revealing the informant's identity outweighs the need for secrecy.

Before the defendant can overcome the government's privilege to refrain from disclosing the identity of an

informant, other courts have required the defendant to make a specific showing of how the informant's testimony would significantly aid him in establishing an asserted defense. See United States v. Diaz (C.A.5, 1981), 655 F.2d 580, 588. "* * * [S]peculation regarding what an informant might possibly testify to is not sufficient to require disclosure." United States v. Halbert (C.A.10, 1982), 668 F.2d 489, 496. See, also, State v. Butler (1984), 9 Ohio St.3d 156, 9 OBR 445, 459 N.E.2d 536 (Even where the defense is entrapment, the defendant is required to plead specific facts before a trial judge is required to order divulgence of the informant's identity.).

The majority has entirely relieved the accused of this burden by permitting in all cases an in camera interrogation of the confidential informant where the prosecution has failed to show that "it is manifestly clear that the testimony will in no way aid the defendant." As the law now stands, the informant's identity will be revealed to defense counsel and the court upon mere speculation that the informant has exculpatory evidence to give. In all like cases to follow, the prosecution will have to demonstrate that the testimony of the informant is not needed to establish an element of the crime, and would not be beneficial in any way to the defense of the charges.

The case sub judice does not involve a situation where, before the accused can be found guilty beyond a reasonable doubt, the prosecution must introduce the testimony of a confidential informant. Unlike State v. Phillips (1971), 27 Ohio St.2d 294, 56 O.O.2d 174, 272 N.E.2d 347, a case in which we ordered disclosure of the informant's identity because the informant was the sole witness to the sale of drugs, the drug transaction involving the appellee was witnessed by an undercover agent. The agent testified that he saw the informant hand appellee a twenty dollar bill. By turning around as much as possible without looking suspicious and by looking into his rear view mirror, the agent was able to observe appellee place an item in the informant's hand, which was later examined and found to be crack cocaine. On the basis of this evidence, appellee could properly be convicted of aggravated trafficking. It was not necessary for the state to present the testimony of the confidential informant. Had appellee been able to give an argument as to why the informant's testimony was material to his innocence, appellee would clearly have been entitled to subpoena this witness. In this scenario the scope of the "informant's privilege" would properly be restricted by the defendant's right to a fair trial.

Since I believe that appellee failed to demonstrate that his interest in presenting the confidential informant as a witness on his behalf, his right to compulsory process under both the United States and Ohio Constitutions was not violated.

Accordingly, I would reverse the judgment of the court of appeals.