**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0612n.06

**No. 02-4339**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 28, 2009**
LEONARD GREEN, Clerk

DERRICK EVANS,                                     )
                                                   )
    Petitioner-Appellant,                          )    ON APPEAL FROM THE
                                                   )    UNITED STATES DISTRICT
    v.                                             )    COURT FOR THE NORTHERN
                                                   )    DISTRICT OF OHIO
BETTY MITCHELL, Warden,                            )
                                                   )
    Respondent-Appellee.                           )
                                                   )

BEFORE: COLE and ROGERS, Circuit Judges, and BARRETT, District Judge.[*]

ROGERS, Circuit Judge. Derrick Evans seeks review of the district court's denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2254. Evans was convicted in Ohio state court for aggravated robbery and murder. The district court denied the habeas petition on all grounds, but granted a certificate of appealability on five grounds: (1) Whether Evans's Sixth Amendment right was violated because the district court allowed a seven-year-old witness to testify; (2) Whether Evans was denied due process because the prosecution withheld a police report and did not inform Evans that a witness was testifying pursuant to a plea agreement; (3) Whether Evans was denied due process because the jury was given outdated instructions regarding accomplice testimony; (4) Whether the prosecutor violated Evans's due process rights by referring to the victim and asking for

---

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

1

justice during closing arguments; and (5) Whether the accumulation of the trial errors denied Evans

of a fair trial.

None of these claims provides grounds for habeas corpus relief.

**I.**

On the evening of March 25, 1987, Joann Richards and Marcellus Williams were stabbed and

killed in their apartment in Cleveland, Ohio. Williams's nineteen-year-old son, Derek Speights, was

also stabbed but survived the attack. Richards's sons, a seven-year-old named Albert and an infant,

were also at the apartment that evening. The apartment was robbed during the course of the attack.

The Ohio Supreme Court summarized the case's history as follows:

On April 6, 1987, a Cuyahoga County Grand Jury issued a six-count indictment naming [Evans], Wayne Frazier and Michael Frazier as the perpetrators of the stabbings. The first two counts in the indictment charged [Evans] and the Fraziers with the aggravated murders of Joann Richards and Marcellus Williams, respectively, each in violation of Ohio R.C. 2903.01. With respect to [Evans], the counts each carried three death-penalty specifications . . . . Also with respect to [Evans], each aggravated murder count contained an aggravated-felony specification and a gun specification.

Count three of the indictment charged [Evans] and the Fraziers with aggravated burglary of the Richards residence in violation of Ohio R.C. 2911.11, and count four charged [Evans] and the Fraziers with the attempted murder of Derek Speights in violation of Ohio R.C. 2903.02 and 2923.02. Both counts three and four contained the same aggravated felony and gun specifications as in counts one and two.

Count five of the indictment charged [Evans] and the Fraziers with aggravated robbery of Marcellus Williams, and count six charged [Evans] and the Fraziers with aggravated robbery of Joann Richards, both in violation of Ohio R.C. 2911.01. Each count also contained the same aggravated felony and gun specifications as in counts one, two, three and four.

[Evans] entered a plea of not guilty to each of the counts in the indictment. He proceeded to trial on all the charges . . . .

The prosecution's chief witness, Derek M. Speights, testified that on March 25, 1987 at about 10:00 p.m., [Evans] and the Fraziers pulled up in an orange Chevette shortly after Speights left a store across the street from his father's home where he had gone to purchase a beer. He identified Wayne Frazier as the driver of the car, Michael Frazier as a passenger in the back seat and [Evans] as the front seat passenger. Speights stated that they asked him if his father was home, to which he responded affirmatively. Speights then was told to tell his father they would be back to see him.

Speights related that approximately one-half hour after his encounter with [Evans] and the Fraziers, the three came to the apartment and knocked on the door. Speights let them into the apartment and they all sat down, with Wayne Frazier sitting on the couch next to Joann Richards and Michael Frazier and [Evans] sitting together on a love seat.

According to the testimony, after about five minutes of general conversation, [Evans] suddenly jumped up with a gun, ran over to Williams and put the gun to Williams's head. [Evans] asked for some money and told "nobody to move." Speights stated that at that same moment, Wayne Frazier ran over to Joann Richards with a knife, and Michael Frazier knocked him (Derek) to the floor. While Speights was down, he could see what appeared to him to be Wayne Frazier stabbing Richards. Speights also observed [Evans] knock Williams down, tie him up with a telephone cord, and stab him on both sides.

At some point during the incident, Michael Frazier tied Speights's hands behind his back with a towel. Michael Frazier then stabbed Speights twenty-one times before he, Speights, was hit in the head with a gun. After Speights was stabbed, he saw Wayne Frazier run into one of the bedrooms and grab a television set. Speights also observed [Evans] take money from Williams's pockets.

Speights further testified as to various orders [Evans] gave to Wayne and Michael Frazier during the entire incident, including an order to kill Speights if he moved, and an order to Wayne Frazier to grab Richards. In his opinion, it was "[l]ike they planned it because the way it happened, as soon as he [Evans] moved, they [the Fraziers] all moved after him."

After the trio left the apartment, Speights tried to get up, but could not walk. He testified that he then crawled over to his father and kicked him to see if he was alive, but his father did not respond. Speights then crawled to the stairway and rolled down the steps, where a tenant who lived downstairs found him. An ambulance was summoned, and after two days of hospitalization for his injuries, Speights gave police the names of the perpetrators.

After the court held a hearing to determine whether seven-year-old Albert Richards was competent to testify, the court found him qualified, and permitted the jury to hear his testimony. Albert testified that, after being put to bed at about 9:00 p.m., he was awakened by banging noises. He got out of bed and saw Wayne Frazier, whom he referred to as "Twin," stabbing his mother on the couch. He also testified that he saw [Evans], known to him as "Da Da," run out of the apartment with a television.

Albert further testified that he observed Wayne Frazier kick his father, Williams, in the eye, and that he did not look for Speights because he (Albert) hid under the bed until the police came. After telling the police officers who arrived on the scene not to shoot him, that "he was a kid," he came out from under the bed and was picked up by one of the officers, and was taken downstairs. Subsequently, Albert gave the police a statement describing the incident that evening.

On March 26, 1987, after speaking with Albert, the police apprehended Wayne Frazier at about 4:00 a.m. After interviewing Wayne, the police learned of two locations where various items relating to the crime were located. At one location, the police found items belonging to the victims including personal papers and Williams's prescription bottle, a buck knife . . . , and a television. At a second location, the police found pieces of burnt clothing and a bottle of cologne that had been used to ignite the clothing. A second knife, found by uniformed officers at another location, was identified to police by both Wayne Frazier and Albert Richards. The knife . . . was confirmed through the testimony of Michael Frazier as belonging to him.

In addition to identifying the knife, Michael Frazier testified as to his version of the events of March 25, 1987. He related that he, his brother Wayne, and [Evans] visited the home of Marcellus Williams at around 11:00 or 12:00 p.m. According to Michael, [Evans] jumped up with a gun, stated, "Everybody get on the floor," and told Wayne to tie up Williams with a telephone cord. Then, Michael testified that Williams was asked for money, to which Williams responded that he did not have any, but indicated that there was some cocaine in an ashtray in the bedroom.

Michael stated that he went to the bedroom, got the cocaine from the ashtray and, upon his return, he saw Joann Richards jump up and try to leap out the window. Wayne grabbed her and, according to Michael, told her nobody was going to get hurt, but that [Evans] then yelled, "Shut up. Shut up, bitch," ran to her and stabbed her, and while stabbing Joann, stabbed Wayne in the hand.

Michael also testified that [Evans] was the only one who stabbed anybody, and that [Evans] had used his (Michael's) knife . . . to stab each of the victims.

In addition to the testimony of Speights, Albert Richards, Michael Frazier, and members of the police department involved in the investigation of the crime and the apprehension of Wayne Frazier, the prosecution presented the testimony of Dr. John A. Daniels, a pathologist with the Cuyahoga County Coroner's Office, and Linda Luke, a forensic serologist with the Trace Evidence Department of the same office. . . .

Daniels concluded that both victims died as a result of multiple stab wounds, and that the deeper stab wounds were more consistent with the use of [Frazier's knife] than with the smaller knife. He also concluded that both deaths were homicides.

Luke, the forensic serologist, testified that an examination of [Frazier's knife] revealed the presence of blood that was consistent with Speights's blood grouping and enzyme type. Her examination of the television recovered the day after the stabbing and tennis shoes obtained during the booking of Wayne Frazier also revealed the presence of blood that was consistent with that of Williams.

The prosecution also presented the testimony of Officer Michael Exline with respect to the arrest of [Evans] in Columbus, Ohio, on May 29, 1987. Patrolman Exline, of the Columbus Police Department, testified that he sought to question [Evans] in connection with an investigation of a purse snatching. When police confronted [Evans] in the basement of a boarding house, underneath the stairway, [Evans] threatened to inject himself with battery acid if they tried to arrest him. . . . According to Exline, [Evans] also volunteered that he "didn't kill those people but he knew who did, but he didn't want to rat on them." . . .

On October 2, 1987, the prosecution closed its case, and [Evans] elected not to present any evidence. After the presentation of closing arguments, the court charged the jury, and it began its deliberations in sequestration.

On the following day, the jury foreman announced in court that the jury had reached a verdict. The court read the jury's verdict finding [Evans] guilty of all the above counts and specifications, except the felony-murder specifications. As to those specifications, the jury found that [Evans] was not the principal offender, and that he did not commit the murders with prior calculation and design.

*State v. Evans*, 586 N.E.2d 1042, 1045-49 (Ohio 1992). Following the jury's recommendation, the

trial court imposed a sentence of death upon Evans for each aggravated-murder count. *Id.* at 1049.

On appellate review, the Ohio Court of Appeals affirmed the conviction. *State v. Evans*, No. 54883, 1990 WL 61739 (Ohio Ct. App. June 7, 1990). The Ohio Supreme Court also affirmed, with one Justice dissenting. *State v. Evans*, 586 N.E.2d 1061. The Ohio Supreme Court denied a Motion for Rehearing, and the United States Supreme Court later denied Evans's petition for certiorari. *Evans v. Ohio*, 506 U.S. 886 (1992).

Evans filed petition for post-conviction relief with the Cuyahoga Court of Common Pleas. That court rejected Evans's petition and the Ohio Court of Appeals affirmed, *State v. Evans*, No. 72330, 1998 WL 767611 (Ohio Ct. App. Oct. 29, 1998). The Ohio Supreme Court refused to hear another appeal. *State v. Evans*, 707 N.E.2d 515 (Ohio 1999).

Evans then petitioned the U.S. District Court for the Northern District of Ohio for a writ of habeas corpus. The district court found Evans's claims without merit and denied the petition. The district court certified six issues for appeal. After that ruling, Evans was relieved from his death sentence under *Atkins v. Virginia*, 536 U.S. 204 (2003), which mooted some of the issues in the district court's certificate of appealability. Five claims remain for our review, numbered in the district court's opinion as 16, 17, 22, 26, and 31.

**II.**

Evans is not entitled to habeas relief. First, the Ohio Supreme Court found seven-year-old Albert Richards competent to testify, so that Evans's Sixth Amendment right was not violated by the admission of Richards's testimony. Second, the Ohio Court of Appeals decision that the prosecution did not violate Evans's due process rights by failing to disclose a police report was not an unreasonable application of *Brady v. Maryland*. Third, Evans's claim that he was denied due

process because the jury was given an outdated version of the instructions regarding accomplice testimony is procedurally defaulted. Fourth, the Ohio Supreme Court's decision that the prosecutor's statements about the victim were not so egregious as to render the trial fundamentally unfair was not an unreasonable application of federal law. Additionally, Evans claim regarding the prosecutor's comments about justice is procedurally defaulted. Fifth, Evans's claim that the accumulation of his trial errors deprived him of a fair trial is unexhausted, defaulted, and without merit.

**A. Witness Competency**

The Ohio Supreme Court's decision regarding the competency of Albert Richards, the seven-year-old witness, leads to the conclusion that there was no constitutional violation here.

Evans argues that the witness was incompetent, and therefore "cross-examination-proof" in violation of *Maryland v. Craig*, 497 U.S. 836, 845-46 (1990), but this claim is belied by the finding of competence by the Ohio Supreme Court. A witness's competency is a state law evidentiary ruling outside of this court's purview, *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir.1976), but Evans also alleges a violation of the Confrontation Clause. The Ohio Supreme Court noted that Richards was able to recall what happened at the time of the murders and the relationships that he had with the various individuals. 586 N.E.2d at 1055. The Ohio Supreme Court noted that after concluding its examination, the trial court found "no reason to think that the young man is not competent to testify. He . . . understands what he is testifying about and is able to give present impressions and certainly can testify about what happened." *Id.* Furthermore, the Ohio Supreme Court noted that the trial court was well aware of Richards's ability to testify because the witness had testified two weeks earlier in Wayne Frazier's trial. *Id.* Under these circumstances, the Ohio Supreme Court's finding

that the witness was competent is binding on this court. "[T]he Ohio Supreme Court's findings of fact made in connection with the state evidentiary issues are binding for purposes of the constitutional inquiry absent clear and convincing evidence to the contrary." *Haliym v. Mitchell*, 492 F.3d 680, 700 (6th Cir. 2007) (citing 28 U.S.C. § 2254(e)(1); *Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001)). Under this finding, Richards knew about "the seriousness of the matter" and was able to submit to cross-examination as required by *Craig*, 497 U.S. at 845-46. The Confrontation Clause "guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens*, 484 U.S. 554, 559 (1988) (citation and internal quotation omitted). Evans was not deprived of that opportunity.

The decision by the Supreme Court of Ohio also demonstrates that Richards understood the oath and that, therefore, Evans was not denied his Sixth Amendment right. "[T]he right guaranteed by the Confrontation Clause . . . insures that the witness will give his statements under oath . . . ." *Craig*, 497 U.S. at 845. The Ohio Supreme Court noted that the trial court asked Richards if he knew the penalties that could arise from lying, to which Richards responded that he knew he could receive corporal punishment. 586 N.E.2d at 1055. The trial court stated that Richards was "certainly able to understand the nature of an oath." *Id.* The Ohio Supreme Court's finding that Richards understood his duty to testify truthfully is binding on this court under *Haliym*, 492 F.3d at 700. Based on this finding, Richards's capacity to testify under oath was "satisfied for purposes of the Confrontation Clause [because Richards was] able to understand the concept of the truth and his duty

to present truthful information to the court." *Haliym*, 492 F.3d at 703. Evans was not denied his Sixth Amendment right.

Evans's arguments to the contrary are without merit. Evans argued that the trial court could not have been aware of Richards's competency because the *voir dire* was "cursory." However, this argument is aimed at the state law question of whether the admission of the testimony was proper. Regardless, as stated above, the record indicates the trial judge was quite familiar with Richards because Richards had testified in Wayne Frazier's trial two weeks earlier and that trial was conducted by the same judge.

Furthermore, even if the admission of Richards's testimony violated the Confrontation Clause, that violation is harmless because the testimony had no "substantial and injurious effect or influence on determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (citation and internal quotation omitted). Richards put Evans at the scene and implicated him in the robbery, but did not implicate Evans as one of the killers. The testimony of two other witnesses also put Evans at the scene, and it is not clear that Evans even denied being at the scene during his trial. Therefore, what evidence Richards did provide was not so damning as to be substantial and injurious in determining the jury's verdict.

**B. *Brady v. Maryland* Claims**

The Ohio Court of Appeals decision that the prosecution did not violate Evans's due process rights by withholding evidence was not an unreasonable application of federal law under 28 U.S.C. §2254(d). *See State v. Evans*, 1998 WL 767611. Evans claimed that the government withheld a supplemental police report that was prepared on March 27, 1987. Although there is some indication

that Evans may have had access to this report, we assume it was not disclosed. Evans also claimed

that the prosecutor did not inform him that Michael Frazier was testifying pursuant to a plea

agreement. The district court correctly found that the Ohio Court of Appeals reasonably determined

that Evans did not allege a cognizable claim under *Brady v. Maryland*, 373 U.S. 83 (1963).

First, the information about Albert Richards contained in the undisclosed report was not

material because it would not have changed the outcome of the trial, and therefore Evans's due

process rights were not violated by the failure to disclose this information. Richards's original

statement to the police, contained in the undisclosed report, did not place Evans at the scene but only

"Twin," Wayne Frazier's street name, and another unidentified person. 1998 WL 767611, at *6.

At trial, however, Richards testified that Evans was at the scene. The undisclosed information, at

best, calls into question Richards's testimony that Evans was at the scene. Even if Evans had been

able to use the information to impeach Richards, two other witnesses also placed Evans at the scene.

Ample other evidence is sufficient assurance that the wrongfully withheld evidence would not upset

the outcome under *Strickler v. Greene*, 527 U.S. 263, 294-96 (1999). Therefore, the undisclosed

information was not "material" under *Brady*, 373 U.S. at 87, because there was not a "reasonable

probability" that the proceeding would have come out differently with this information, as required

by *United States v. Bagley*, 473 U.S. 667, 682 (1985). Although the Ohio Court of Appeals did not

consider the discrepancy between Richards's original statement to the police and his statement at

trial, the court's conclusion that there was no *Brady* violation was a reasonable application of federal

law.

Second, the Ohio Court of Appeals reasonably determined that the information about Speights in the undisclosed report was available to Evans at trial, and therefore Evans's due process rights were not violated by the failure to disclose this information. The undisclosed report noted that two witnesses had seen Speights on the sidewalk after the murders and had heard Speights say that "Twin" (Wayne Frazier) perpetrated the murders. 1998 WL 767611, at *6. The Ohio Court of Appeals noted that this information was fully disclosed at trial: the information was not contrary to Speights's testimony that Frazier stabbed Joann Richards. *Id.* Furthermore, it was consistent with the verdict of the jury, which found that Evans was not the main perpetrator. *Id.* The Ohio Court of Appeals reasonably determined that there was no *Brady* violation because the essential facts were known to Evans, as discussed in *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

Third, the information about the gun contained in the undisclosed report was neither exculpatory nor material, and therefore Evans's due process rights were not violated by the failure to disclose this information. The report noted that Frazier had been in possession of a gun earlier in the afternoon. 1998 WL 767611, at *6. Even if Evans had been able to use this information to impeach Speights's credibility, the information would not have contradicted Speights's testimony that when the crime occurred later that evening, Evans had the gun. The information was not exculpatory because it is possible that Frazier had the gun earlier in the day and that Evans had the gun when the crime began. Therefore, although the Ohio Court of Appeals did not specifically find as such, the evidence was not material because there was not a "reasonable probability" that the proceeding would have come out differently if this information was known. *See Bagley*, 473 U.S.

at 682. The Ohio Court of Appeals conclusion that there was no prejudice, and thus no *Brady* violation, was a reasonable application of federal law.

Fourth, the information about Michael Frazier's motive in the undisclosed report was not material, and therefore Evans's due process rights were not violated by the failure to disclose this information. The report included notes from an interview with Clarence Kroger, Frazier's employer. Kroger stated that Frazier told him that Frazier thought the victim, Marcellus Williams, was going to "take him out." It is not clear that Evans raised this issue in his state court post-conviction proceedings. Even if this claim was not barred by the exhaustion requirement of 28 U.S.C. § 2254(b), there was no *Brady* violation. The undisclosed information indicates that Frazier acted in self-defense when he committed the crime. Although this information is inconsistent with Speights's testimony regarding how the event took place, it would not have changed the outcome of Evans's trial. The jury specifically found that Evans was not the principal offender. 1998 WL 767611, at *6. Further information that Frazier *was* the principal offender was not material under *Bagley*, 473 U.S. at 682.

Fifth, the state's alleged failure to disclose Michael Frazier's plea agreement did not violate Evans's due process rights. Evans noted that Frazier entered into a plea agreement with the state four days after he testified in Evans's trial. From this fact, Evans alleged that a deal must have existed between Frazier and the state at the time of Frazier testified, and Evans was not informed of this deal. It is not clear that Evans raised this issue in his state court post-conviction proceedings. Even if this claim was not barred by the exhaustion requirement of 28 U.S.C. § 2254(b), there is no *Brady* violation. Frazier testified in open court that there was no deal in place, and the trial court

indicated that it would be willing to consider Frazier's cooperation if it later had to sentence Frazier to the death penalty. Evans's allegation that a plea agreement was already in place is contrary to the record and baseless. Furthermore, Frazier's motive to testify against Evans was discussed in open court, and Evans could have impeached Frazier on those grounds. There was no *Brady* violation because the essential facts were known to Evans. *Coe*, 161 F.3d at 344.

## C. Accomplice Instruction

Evans's claim that he was denied due process because the trial court used outdated jury instructions is procedurally defaulted. Evans did not object to the instructions at trial as required by Ohio Rule of Criminal Procedure 30(A). 586 N.E.2d at 1052. The Ohio Supreme Court, therefore, reviewed this claim for plain error. *Id.* The court found that although there was an error, Evans was not prejudiced by the use of the instruction because the result of the trial would not have been different. *Id.* Under *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), this court cannot review a federal claim that was procedurally defaulted in state court because the procedural default is an independent state ground for the state court's determination. *See Scott v. Mitchell*, 209 F.3d 854, 864 (6th Cir. 2000). Evans has not demonstrated "cause" for his failure to follow the rule, as required by *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The district court correctly found that this claim was procedurally defaulted.

This procedural default was not waived by any discussion of the merits in the Ohio Supreme Court's opinion. The Supreme Court only discussed the merits to support the proposition that the trial result would not have been different, an element of the plain error standard. 586 N.E.2d at 1052. After this discussion, the court concluded its discussion by stating that Evans "has failed to

show plain error, and his proposition is rejected." *Id.* "Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

Nor can we excuse the procedural default on account of the ineffective assistance of counsel, because that claim is not properly before this court. In his direct appeal, Evans asserted that his counsel's failure to object to the instruction constituted ineffective assistance. *See State v. Evans*, 586 N.E.2d at 1056. However, in his habeas petition in federal district court, Evans did not make a specific allegation of ineffective assistance on this ground. Evans stated only that his counsel was ineffective because he "neglected to object to or prepare for other areas specifically raised in the instant petition." The district court found that allegation was "too vague for the Court to address. Because Evans does not state with specificity what 'other areas' counsel acted unreasonably to his detriment, this subclaim is not well-taken." The district court did not include this ineffective assistance claim in the certificate of appealability and, therefore, the claim is not before this court.

**D. Prosecutorial Misconduct**

**1. Victim Impact Statements (Subclaim (j))**

The Ohio Supreme Court's conclusion that the prosecutor's comments about the victim did not deprive Evans of a fair trial was not an unreasonable application of federal law under 28 U.S.C. §2254(d). During closing arguments of the guilt phase, the prosecutor stated that:

> the poignant aspect, when you stop to think about it, a young man watching his mother murdered with 22 stab wounds and crawling under the bed and coming out when the police officers found him saying, 'Don't shoot. I'm only a kid. I'm only a kid.'

586 N.E.2d at 1050. As the Ohio Supreme Court found, these remarks were a restatement of the facts already presented, *id.*, and were therefore unlikely to "mislead the jury or prejudice the accused," *Washington v. Hofbauer*, 228 F.3d 689, 708 (6th Cir. 2000). Furthermore, this was one "isolated" statement, *id.*, in the prosecutor's closing argument. Although the statement was likely "deliberately . . . presented," it was not so damning given the "substantial" amount of evidence against Evans. *Id.* The jury had already heard Richards testify. The prosecutor's reiteration of that testimony was not more inflammatory than the testimony itself, so "as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Id.* (citation and internal quotation omitted).

**2. References to Justice (Subclaim (k))**

Evans's claim that the prosecutor's comments about justice deprived him of a fair trial is procedurally defaulted. As the Ohio Supreme Court noted, 586 N.E.2d at 1051, Evans did not object to the prosecutor's comments during trial as required by Ohio's contemporaneous objection rule, *State v. De Nicola*, 126 N.E.2d 62, 66 (Ohio 1955). The Ohio Supreme Court applied plain error review and stated that there was "no showing that the outcome of this case clearly would have been different but for the closing argument of the prosecutor." 586 N.E.2d at 1051. The procedural default is an adequate and independent state ground upon which the state court based its decision. *See Maupin*, 785 F.2d at 138. Evans has not demonstrated "cause" for his failure to follow the rule, *Burton v. Renico*, 391 F.3d 764, 775 (6th Cir. 2004), and the district court correctly found that federal review was foreclosed under *Scott*, 209 F.3d at 864.

The Ohio Supreme Court did not waive any procedural default by addressing the merits of the claim. The Ohio Supreme Court recalled the prosecutor's comments made in both the guilt and penalty phases. 586 N.E.2d at 1051. It noted that "[t]here is nothing inherently erroneous in calling for justice" and the stated that "[a]dditionally, because appellant failed to object, we would review any error under the stringent 'plain error' standard." *Id.* Although the Ohio Supreme Court included some discussion of the merits, this discussion was in the context of showing that there was no prejudice under plain error review. "[P]lain error review does not constitute a waiver of state procedural default rules." *Seymour*, 224 F.3d at 557.

**E. Cumulative Error**

Evans's claim that the accumulation of his trial errors denied him of a fair trial is unexhausted and barred. Evans does not argue, and there is no indication, that this constitutional claim was made in the state court. Although one justice dissented from the Ohio Supreme Court's decision on this ground,[1] 586 N.E.2d at 1061, it was never discussed in the majority opinion. Evans has forfeited review of this claim in the Ohio courts because the "Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals." *Fornash v. Marshall*, 686 F.2d 1179, 1185 n.7 (6th Cir. 1982) (citing *State v. Phillips*, 272 N.E.2d 347, 352 (Ohio 1971)). Therefore, Evans cannot satisfy the exhaustion requirement of 28 U.S.C. § 2254(b) because the Ohio Supreme Court has not had a "full and fair opportunity" to review the

---

[1] Several of the reasons given in the dissent for the accumulation of error are not properly before this court: the trial court's failure to instruct on murder, Evans's low IQ, and prosecutorial misconduct related to the death penalty. 586 N.E.2d at 1061.

claim. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Evans did not show any cause for his default and the district court correctly found the claim barred. *See Teague v. Lane*, 489 U.S. 288, 298 (1989).

Even if we were to address the merits, Evans is not entitled to relief on his cumulative error claim. Neither the Supreme Court nor this court has held that "distinct constitutional claims can be cumulated to grant habeas relief." *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004). If such a claim could be the basis for § 2254 habeas relief, it is not available where, as here, "there are simply no errors to cumulate." *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (en banc) (citing *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004)).

## IV.

The judgment of the district court is affirmed.