JOURNAL ENTRY AND OPINION
Defendant-appellant Thomas Richard appeals from his convictions for possession of drugs (R.C. 2925.11), trafficking in cocaine (R.C. 2925.03), carrying a concealed weapon (R.C. 2923.12) and possession of criminal tools (R.C. 2923.24). Defendant contends the trial court erred in failing to suppress illegally seized property; in not requiring the State to identify the specific purchasers of illegal drugs; in denying defendant's motion to acquit; and in ordering forfeiture of property seized. For the reasons hereinafter stated, we affirm.
On January 12, 1999, defendant filed a motion to suppress and for return of illegally seized property. Subsequently, on February 11, 1999, the trial court held a hearing on this motion. At the hearing, the State presented the testimony of several members of the SWAT team who executed the search warrant. The defendant then presented the testimony of several witnesses who were present in the 8407 Wade Park home at the time the SWAT team executed the search warrant: defendant Thomas Richard; Jeffrey Richard, defendant's brother and co-defendant; Challie Kelly, defendant's brother; and Jimmie Richard, defendant's mother.
Defendant denied that he ever participated in a drug transaction, denied that he ever stored drugs in a 1985 Beige Cutlass Oldsmobile and denied that the Beckman Road house was a "stash" house for storing drugs. He also stated that never entered the side door of the Beckman Road house as alleged by police in the search warrant affidavit as he always used the front entrance. He thereafter testified to the events that transpired when the SWAT team raided the Wade Park Avenue home. He claimed that the SWAT team never knocked on the door but immediately bashed in the door.
After the SWAT team conducted the search of the Wade Park Avenue house, the defendant testified that he was then taken to the Beckman Road house. After kicking in the outside door, the SWAT team then used a key to open another door leading into the home. The key was found on a key ring found at the Wade Park Avenue house. The Beckman Road residence was then searched.
On cross examination the defendant claimed that his residence at the time the two homes were searched was 1585 East 84th Street. He claimed a woman named Dacia Love lived at the Beckman Road house.
Dacia Love testified that she lived at the Beckman Road address and that she was defendant's girlfriend and mother of his four children. She stated that defendant stayed at the Beckman Road address "off and on" and that he paid the rent for the house. She claimed that she also has another home on Wade Park but that she and the children live at the Beckman Road address.
Defendant's brother and co-defendant Jeffrey Richard testified to the search by the SWAT team. On cross examination he testified that he resided at the 8704 Wade Park home. He testified that his Cadillac was confiscated from the front of the house along with defendant's beige Cutlass. He said that defendant's Cadillac at the Beckman Road house was also seized.
Calvin Williams, Sergeant of the SWAT team, testified that his unit was requested to obtain a search warrant to be executed at 8407 Wade Park, Cleveland. Sgt. Williams explained that the SWAT team was usually used on warrants that are deemed to be high risk. At the SWAT team briefing, prior to the action, the officers learned details about the premises to be searched. Specifically, they were informed that there were guns involved; there were children at the residence; there was a lot of recent police activity at the residence; there were drugs involved; and that "there were several armed males that frequented the house and also lived in the house." When the team arrived at the house, they went onto the front porch, verified the address and gained access to the house by ramming the door. Sgt. Williams testified that before ramming the door he yelled, "police" as they always do and waited about five to six seconds. This testimony was corroborated in large part by SWAT team Officer Dennis Blotnik who participated in the action.
On cross-examination, Sgt. Williams explained that not only did they yell "police" but they also made a great deal of noise to emphasize the fact that they were the police. Furthermore, Williams testified that they waited about five to six seconds after announcing "police," there was no reply, even though they knew there were people inside, before ramming the door.
Officer Rick Sheppard testified that he was also present as a member of the SWAT team on September 30, 1998. He was the designated doorman that evening and was responsible for the ram. He testified that he approached the door, squared up with it, yelled "police," and then knocked on the door with the ram. When he got no answer, he hit the door open. He testified that the SWAT team was told that there were extensive drug sales going on in the house; that there were firearms in the house; and that on the evening before, detectives witnessed zone cars at the house in connection with shots fired. Officer Sheppard acknowledged that this information "absolutely" played a role in the way that the SWAT team gained entry into the home. On cross-examination, Officer Sheppard explained that he waited about four seconds before ramming the door in. That was enough time to allow a response, but not enough time for the occupants to get to any guns.
Detective Richard Ruffin, the affiant on both the 8407 Wade Park and 8722 Beckman Road search warrants, testified regarding the surveillance that had been conducted prior to obtaining the warrants. He stated that citizen complaints were received by the Cleveland Police Department that a "Tom Richards" or "Tom Richardson" was engaged in drug trafficking at the 8722 Beckman residence and that the suspect also keeps drugs in his 1985 beige Oldsmobile Cutlass. Citizen complaints were also received indicating that a "Tom Richards" and his brother, "Jeff" were engaged in drug trafficking at 8407 Wade Park Avenue.
The detective stated that the surveillance lasted about a week or two. During this time a large amount of vehicular and pedestrian traffic was witnessed coming and going from the Wade Park address. The individuals visiting the address would engage a male in a brief conversation and then a hand to hand exchange would take place. The detective identified the defendant and his brother Jeffrey as the males he saw take part in the hand to hand transactions.
The Street Crimes Unit conducted three controlled buys using a confidential informant: one from defendant Thomas Richard and two from Jeffery Richard. During one of the controlled buys, the informant had a brief conversation with defendant in the front yard of the home and then walked away without making an exchange. Defendant then drove away in his beige Cutlass. The informant told the detective that the defendant told him he had to go and get the drugs. Defendant was followed to 8722 Beckman where he stayed approximately five to seven minutes before returning to 8407 Wade Park. The informant returned and purchased drugs from defendant.
Det. Ruffin also testified that the reason SWAT was used to gain entrance was because there was believed to be a lot of weapons in the house and there was also a large volume of people in the house. Det. Ruffin further testified that it is easy to destroy narcotics prior to the entry of police. Defendant also had a felonious assault arrest in 1995.
Det. Ruffin testified that entrance to the Beckman Road case was gained by using a key obtained from the Wade Park home. He testified that he was aware defendant lived in the upstairs part of the duplex as his name was on the utilities and his 1995 felonious assault arrest listed Beckman as the address.
Detective Ruffin testified on cross examination that $44,045 in cash was seized from the Beckman Road house. Det. Ruffin testified that the money was seized due to complaints that the Beckman Road house was a "stash" house and that in his experience the drugs and money are usually kept at a different place from where the drugs are sold. The detective did not find any of the "buy money" in the $40,000 stash. On redirect, Det. Ruffin testified that seized from the Beckman Road address were two shotguns; two scales; suspected cocaine from the kitchen table; suspected marijuana from the front bedroom; $40,000 from a safe that was kept inside a dryer in the kitchen; and $4,045 recovered from a dresser drawer; and a Cadillac belonging to the defendant.
Detective Richard Milligan also testified about the circumstances that resulted in the surveillance of the area and the search warrant issued on the 8407 Wade Park and 8722 Beckman Road premises.
At the conclusion of Det. Milligan's testimony, the parties presented their closing arguments regarding the motion to suppress and return of illegally seized property. On February 25, 1999, the trial court ordered that two Cadillacs be returned to the defendant and Jeffrey Richard. Subsequently, on June 16, 1999, the trial court denied defendant's motion to suppress and for return of illegally seized property.
After several continuances, defendant's trial finally commenced on June 22, 1999. The State presented the testimony of several police officers who were involved in the execution of the search warrants for 8407 Wade Park and 8722 Beckman.
Det. Milligan testified that they set up surveillance at 8407 Wade Park and 8722 Beckman Road after receiving complaints from Crime Stoppers. The police were given information that two brothers, "Tom" and "Jeff" were selling drugs out of their mother's home on Wade Park Avenue. Descriptions of the two men were also given. During surveillance, they observed heavy pedestrian and vehicular traffic at the Wade Park address. With the aid of binoculars, they witnessed individuals visiting the residence engaging in hand-to-hand transactions in the front yard and porch area or coming and going from the house for a short period. The night before the search warrants were executed, shots were fired at the Wade Park address and several zone cars responded.
He described a controlled buy on September 23, 1998, with the assistance of a Confidential Reliable Informant (CRI). Det. Milligan and his partner Det. Terry Preston met with the CRI and set up the controlled buy from defendant which they observed through binoculars in the front yard. The CRI approached the defendant with $50 and asked for drugs. After a few moments of conversation, the defendant entered a beige Cutlass and drove off. About 10 to 15 minutes later, defendant returned and gave the CRI the drugs.
After the first controlled buy from defendant, Det. Milligan testified that they continued their surveillance, and on September 28 and 30, 1998, second and third controlled buys were made from defendant's brother Jeffrey Richard with the assistance of a CRI. The buy on September 30th occurred about two hours before the search warrant was executed for the purpose of placing the police buy money in the house.
Det. Milligan testified that he participated in the searches of 8407 Wade Park and 8722 Beckman. At Wade Park, he found a black vinyl leather-like pouch in Jeffrey Richard's bedroom which contained five rocks of crack cocaine, $173 in U.S. currency and the police buy money from the last controlled buy. Three loaded guns were also located in that same bedroom, two under the mattress, a .380 automatic and a .38 caliber revolver. The third gun, a .25 caliber Raven, was located on the dresser. Det. Milligan testified that he knew this to be Jeffrey Richard's bedroom based on the personal papers found there.
Det. Milligan testified that a loaded .38 caliber revolver was recovered under the front seat of the defendant's beige Cutlass Oldsmobile. At the Beckman Road address they found $40,000 in a safe located in the kitchen dryer. The money was bundled in $2,000 amounts. He did not believe this money came from a bank as the dollar amounts were in random order.
Det. Preston also testified regarding the surveillance of 8407 Wade Park and 8722 Beckman Road, the controlled buys, the obtaining of the search warrant, and the execution of the warrant. He testified that during the execution of the warrant, he was accompanied by Sgt. James Lewis, Det. Milligan, Det. Ruffin, Det. Jamusca Britten, Det. Matthew Speights and other members of the SWAT team. He testified that the SWAT team is used in the execution of a search warrant when the situation is determined to be extremely dangerous. Det. Preston testified that at 8407 Wade Park a safe was found which they learned belonged to Jeffrey Richard. The safe contained $10,043 in cash and a tempered glass tube which is often used to cook or process crack cocaine.
Sgt. Lewis testified to the execution of the warrants at the two homes. He stated that the two scales found at the Beckman Road house were triple beam scales which are more sensitive scales than an ordinary kitchen scale. He stated that in his 33 years of experience as an officer, the scales were indicative of drug activity.
Det. Ruffin, Det. Britten, Det. Walker and Det. Speights also testified for the prosecution regarding the execution of the search warrants for 8407 Wade Park and 8733 Beckman Road.
At the conclusion of the State's case-in-chief, the defense moved for a Crim.R. 29 motion for acquittal. This motion was denied by the trial court.
The defense then presented the testimony of Jimmie Richard, Dacia Love, Challie Kelly and defendant who were all present at 8407 Wade Park at the time the search warrant was executed. They all testified to the SWAT team's storming of the home with their guns pointed and ordering the men to the floor and the women and children to the couch.
On July 7, 1999, the jury returned its verdict finding defendant guilty of two counts of possession of drugs (R.C. 2925.11); one count of drug trafficking (R.C. 2925.03), one count of carrying a concealed weapon (R.C. 2923.12) and one count of possession of criminal tools (R.C.2923.23). Defendant's post-trial motions for acquittal and for a new trial were denied by the trial court. Defendant was subsequently sentenced to six months on each count, with all to run concurrent to each other except for Count Three, possession of drugs, which was to run consecutive with the other counts, for a total of 12 months. Thereafter, the trial court pursuant to defendant's motion merged one of the counts for possession of drugs with the count for drug trafficking and dismissed the possession count.
We will address defendant's assignments of error in the order presented.
 I. THE COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION TO SUPPRESS.
In his first assignment of error, defendant asserts that there was insufficient probable cause to support the search warrant issued for the Beckman Road House. Defendant asserts that, as a result, the search of the home was unreasonable and any items seized during the search were inadmissible and should have been suppressed.
The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. When reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the reviewing court is only to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. State v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus, following Illinois v. Gates (1983),462 U.S. 213, 238-239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527. To determine the sufficiency of probable cause in an affidavit in support of a search warrant, the issuing judge must:
 [M]ake a practical, common-sense decision whether given all of the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Id. at paragraph one of the syllabus. A reviewing court should accord great deference to the judge's determination of probable cause, and doubtful cases should be resolved in favor of upholding the warrant. Id.
In the instant case, the affidavit in support of the search warrant was signed by Det. Ruffin and states that over the past month, several citizens' complaints and a Crime Stoppers complaint were received by the police department that "Tom Richards" or "Tom Richardson" and his brother "Jeff" were trafficking in drugs at 8407 Wade Park Avenue. The crime stopper's report indicated that the house on 8722 Beckman Road was a "stash" house.
Surveillance of the Wade Park residence indicated very heavy pedestrian and vehicular traffic with suspected drug trafficking observed at that location. The affidavit states that members of the police department were contacted by a confidential informant who told them the defendant's name was Tom Richards and that he was selling drugs from the Wade Park address and used the address on Beckman Road as a "stash house." The officers thereafter set up a controlled buy using the CRI. They observed the CRI approach the defendant and saw the defendant leave the Wade Park house in a beige Cutlass, drive to 8722 Beckman Avenue and a short time later returned to 8407 Wade Park where he was then gave the CRI the drugs. The affidavit also stated that the police observed other similar activity between the defendant and people who would come to the Wade Park house. The defendant was seen to leave the Wade Park address and followed to the Beckman Road address. Upon his return, the defendant was observed making hand-to-hand transactions with the various individuals. The affidavit expresses that this activity is indicative of drug trafficking. The affidavit also described the two controlled purchases by the CRI from Jeffrey
We find, based on this information contained in the affidavit, that the judge had a "substantial basis" for concluding that sufficient probable cause existed for a search warrant. In this finding, we must note the great deference that must be accorded to the judge's probable cause determination and that any doubts are to be resolved in upholding the warrant.
We find that the trial court could justifiably find that the search of the home was reasonable based on the circumstances that existed at the time of the execution of the search warrant. Thus, the trial court correctly denied defendant's motion to suppress.
Assignment of Error I is overruled.
 II. GIVEN THE OFFICERS' TESTIMONY THAT ENTRY INTO THE WADE PARK HOME FOLLOWED WITHIN 2-3 SECONDS OF THEIR KNOCK, EVEN IF THIS WERE TRUE, THE FORCIBLE ENTRY (GAINED BY THE USE OF A BATTERING RAM) WAS NONETHELESS UNLAWFUL AND INDEFENSIBLE.BECAUSE THIS WAS SO, THE ARREST OR INCIDENT TO THE EXECUTION OF THE WARRANT MUST BE DEEMED FRUIT OF THE POISONOUS TREE.
Defendant further asserts that the SWAT team's unannounced entry into the residence was unlawful. We disagree.
The "knock and announce" rule on which defendant relies is codified in R.C. 2935.12(A), which provides for forcible entry in executing a search warrant:
 [W]hen executing a search warrant, * * * the law enforcement officer, * * * may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the search warrant * * * he is refused admittance, but the law enforcement officer * * * executing the search warrant shall not enter a house or building not described in the warrant.
In the instant case, there is conflicting testimony regarding whether the SWAT team knocked on the door and announced its presence prior to knocking down the door and entering the residence. Even if we assume that the SWAT team failed to knock and announce in violation of R.C. 2935.12(A), such an unannounced intrusion may still be reasonable under theFourth Amendment.
In State v. King (Dec. 2, 1999), Cuyahoga App. No. 76373, this Court recently addressed the reasonableness of a "no knock" entry of a residence. In King, we stated:
 The United States Supreme Court recently addressed the application of the knock and announce rule with regard to the "reasonableness" standard for searches under the Fourth Amendment. See Richards v. Wisconsin (1997), 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615. In Richards, the Court determined that in felony drug investigations a "no knock" entry, wherein the police are justified in dispensing with the "knock and announce" requirement, may be done where the police have,
 "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing destruction of evidence."
 520 U.S. at 394, 117 S.Ct. at 1421.
 Richards further stated that whenever the reasonableness of a no-knock entry is challenged, this "reasonable suspicion" showing by the police is not a high one and that the reasonableness of the officer's decision must be evaluated "as of the time they entered the" dwelling. 520 U.S. at 394-395, 117 S.Ct. at 1422.
In the instant case, Sgt. Williams of the SWAT team testified at the suppression hearing that prior to executing the warrant, they were briefed that this was a drug case, that there were guns involved, and that "there were several armed males that frequented the house and also lived in the house." Det. Ruffin testified that the reason the SWAT team was used to gain entry to the 8407 Wade Park residence was because it was believed that there were a lot of weapons in the house and there was also a large volume of people in the house. Officer Sheppard further testified that the SWAT team was told that there were extensive drug sales going on in the house, that there were firearms in the house and that on the evening before detectives witnessed zone cars at the house in connection with shots fired. Officer Sheppard further acknowledged that this information absolutely played a role in the way that the team gained entry into the house.
We find that the SWAT team was sufficiently justified in failing to adhere to the "knock and announce" requirement as there was "a reasonable suspicion" that knocking and announcing its presence, under these circumstances, would have been dangerous to the officers involved and perhaps the inhabitants themselves. During the one or two week surveillance of the residence, the police obtained a significant amount of information regarding the drug and gun activity that took place in the home. Based on the exigent circumstances in this case, we find that it was reasonable for the SWAT team to conclude that an announced entry into the residence would have allowed the occupants to obtain their weapons and/or destroy evidence. Regardless of whether the SWAT team announced its presence, this entry was reasonable under the Fourth Amendment.
Furthermore, the evidence indicated that the defendant did not reside at the Wade Park home. The Ohio Supreme Court in State v. Coleman
(1989), 45 Ohio St.3d 298, 306 held that "Fourth Amendment rights are personal in nature. A person who alleges error by the use of evidence taken from someone else's property cannot claim that his own rights have been violated." See, also, State v. Bridges (October 5, 1989), Cuyahoga App. No. 55954, unreported. The defendant therefore lacks standing to raise this argument.
Assignment of Error II is overruled.
 III. THE COURT ERRED WHEN, FOR REASONS THAT CANNOT BE DEFENDED, HE REFUSED TO REQUIRE THE STATE TO DIVULGE THE IDENTITY OF THE ALLEGED INFORMANT WHO WAS SAID TO HAVE BEEN THE PURCHASER (AND THUS A PARTICIPANT) IN THE ALLEGED DRUG SALE CENTRALIZED IN THE CASE AGAINST APPELLANT.
The standard of review that we must apply to this case is whether the trial court abused its discretion in refusing to order the State to disclose the identity of the confidential informant. State v. Brown
(1992), 64 Ohio St.3d 649; State v. Feltner (1993), 87 Ohio App.3d 279,281. We will not reverse a trial court's decision denying a request for disclosure absent an abuse of discretion. Feltner, supra, at 282. The term abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
A criminal defendant is entitled to disclosure of a confidential informant's identity only where the informant's testimony is either: (1) vital to establishing an essential element of the offense charged; or (2) helpful or beneficial to the accused in preparing a defense. State v.Williams (1983), 4 Ohio St.3d 74, syllabus. If the informant's degree of participation is such that the informant is essentially a State's witness, the balance tilts in favor of disclosure. Id. at 76. However, where disclosure is not helpful to the defense, the prosecution need not reveal the informant's identity. Id. The defendant bears the burden of establishing the need for learning the informant's identity. Feltner,supra; State v. Parsons (1989), 64 Ohio App.3d 63, 69.
 The question of disclosure of a confidential informant becomes a balancing of competing interests. The defendant's right to confront his or her accusers, and the state's right to preserve the anonymity of informants. State v. Phillips (1971), 27 Ohio St.2d 294. The underlying thought process relative to the informants' privilege is discussed in State v. Roe (1971), 26 Ohio St.2d 243, 246, 271 N.E.2d 296:
 "* * * The purpose of the privilege is the furtherance and protection of the public in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and, by preserving their anonymity, encourage them to perform that obligation. See Roviaro v. United States (1957), 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639."
State v. Crawford (June 11, 1998), Cuyahoga App. No. 72893, unreported.
Det. Milligan and Det. Preston testified that they searched the CRI, gave him the buy money, observed the CRI meet with defendant, and observed the CRI return with crack cocaine and without the buy money. Defendant has failed to show that disclosure of the CRI's identity was vital to establishing an essential element of the offenses charged or was helpful in preparing his defense. The trial court's denial of defendant's request for disclosure was based on a balancing of the public interest and protecting the public flow of information against defendant's right to prepare his defense. We cannot find that this decision was unreasonable, arbitrary or unconscionable to constitute an abuse of the trial court's discretion.
Assignment of Error III is overruled.
 IV. THE VERDICTS FINDING THE APPELLANT GUILTY OF THE CHARGES: HE JOINTLY POSSESSED DRUGS FOUND IN THE HOME THAT BELONGED TO HIS BROTHER (COUNT 3); HE SOLD DRUGS TO AN UNIDENTIFIED PERSON (COUNT 4); HE WAS IN POSSESSION OF DRUGS FOUND IN THE WADE PARK HOME (COUNT 7); HE WAS CARRYING A CONCEALED WEAPON (COUNT 10); AND, THAT HE WAS IN POSSESSION OF CRIMINAL TOOLS, WHICH INCLUDED HIS VEHICLE AND OTHER ITEMS HENCE, THE COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL, WHICH WAS RENEWED AT THE CLOSE OF THE EVIDENCE AND POST-TRIAL.
Defendant asserts that the trial court erred in not granting the Crim.R. 29 motion for acquittal because there was insufficient evidence to support a conviction. We disagree.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. See State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The standard of review with regard to the sufficiency of evidence was recently summarized by the Supreme Court in State v. Smith (1997),80 Ohio St.3d 89, 113, as follows:
 Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict, State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546, whereas the "[w]eight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) Id. at 387, 678 N.E.2d at 546.
 In reviewing the record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. * * *
Defendant asserts that there was insufficient evidence to support his conviction for the controlled buy on September 23, 1998 as the officers' testimony was the only evidence of the buy as no records were shown indicating that the buy in fact occurred, and the CRI was undisclosed making it impossible to cross examine him. Whether the officers' testimony regarding the controlled buy was credible or not was for the trier of fact to determine. Construing their testimony in the light most favorable to the prosecution, there was sufficient evidence of the controlled buy.
Defendant also argues that since there was evidence that another person drove defendant's beige Cutlass Oldsmobile in which the gun was found, there was insufficient evidence to support that the weapon was indeed his. However, evidence was presented that the defendant had two cars. One was a Cadillac located at the Beckman Road address. The other was the beige Cutlass. When the search warrant was executed, the defendant was at the Wade Park address, and his Cutlass was parked out front. This leads to the reasonable conclusion that the defendant drove the car to the Wade Park address. Therefore, there was sufficient evidence that defendant owned the gun found under the driver's seat.
Although the defendant raises in his assignment of error that the evidence was insufficient to support the joint possession and trafficking of drugs with his brother and the criminal tools count, he does not argue the insufficiency in the body of the brief. We nonetheless find the evidence was sufficient to support these counts as well, as the officers testified to the extensive drug transactions that occurred at the Wade Park residence. They witnessed both the defendant and his brother conducting the transactions.The officers also testified that they witnessed the defendant driving his beige Oldsmobile from the Wade Park home to the Beckman home where he would then, after staying at the Beckman residence for several minutes, drive back to the Wade Park home to finish the drug transactions. Although, again, this is solely supported by the officers' testimony, we find their credibility is for the trier of facts.
The trial court properly overruled defendant's Crim.R. 29(A) motion for acquittal.
Assignment of Error IV is overruled.
 V. THE COURT ERRED IN ORDERING THE FORFEITURE OF THE $40,000 IN FUNDS SEIZED FROM THE DEFENDANT'S HOME.
In his final assignment of error, defendant asserts the State failed to establish a sufficient nexus between the $40,000 found in the dryer at the Beckman Road house.
We find that pursuant to R.C. 2933.41(C), defendant lost the right to possession of the money as there was a sufficient showing that the money was used in the commission of drug offenses. We also find that the $40,000 constituted contraband pursuant to R.C. 2933.43(A).
R.C. 2933.41(C)(1) provides that a person loses any right that he or she may have to the possession and ownership of property if the property "was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and the person is a conspirator, accomplice, or offender with respect to the offense." Furthermore, R.C. 2901.01(13)(e) defines contraband as:
 Any controlled substance as defined in section 3719.01
of the Revised Code, or any device, paraphernalia, money as defined in section 1301.01 of the Revised Code, or other means of exchange that has been, is being, or is intended to be used in an attempt or conspiracy to violate, or in a violation of, Chapter 2925 or 3719 of the Revised Code.
We find that it was reasonable to conclude that the $40,000 was associated with the drug activity at the 8407 Wade Park residence. Several witnesses testified to the significant amount of drug activity taking place at the Wade Park home and defendant was seen traveling between the Wade Park and Beckman homes in making drug sales. The money was bundled together in amounts of $2,000 with the various amount of the bills in random order. Two scales commonly used in drug activity were also found on the premises. There was a sufficient showing that the cash was used in the commission of drug trafficking, and therefore, the trial court correctly determined that it was contraband subject to forfeiture.
Assignment of Error V is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DYKE, A.J., and ROCCO, J., CONCUR.