OPINION
{¶ 1} Defendant, Carl Brock, appeals from his conviction and sentence for possession of crack cocaine.
 {¶ 2} On April 25, 2001, Defendant was s resident of the Volunteers of America facility in Dayton, Ohio. Jerrell Dabney was employed there as a house manager. At approximately 1:00 am., as Dabney was making his rounds through the facility, he noticed some suspicious behavior on the part of another resident, Mac White, near the entrance to the restroom.
 {¶ 3} Dabney entered the restroom and saw Mark Stanzel standing in front of the door to one of the stalls. Defendant Brock was standing in that stall with his back to Dabney. Dabney immediately noticed the odor of burning crack cocaine, which he recognized from his own past experiences with drugs.
 {¶ 4} Dabney walked past Stanzel and pushed open the door of the stall, and he then saw that Defendant Brock had a Mountain Dew can in one hand and lit lighter in the other that he was holding up against the can, "torching it." There were holes in the can, and it had been turned into a makeshift crack pipe. There was a burned substance and some ashes on the can, and Defendant was inhaling the vapor produced by the burning substance. Dabney took the can from Defendant and called police to the scene. A field test of the residue on the can revealed the presence of crack cocaine. Police then arrested Defendant for drug abuse.
 {¶ 5} Defendant Brock was indicted for possessing one gram or less of crack cocaine in violation of R.C. 2925.11(A). The matter proceeded to a jury trial.
 {¶ 6} According to Defendant's testimony at trial, when he entered the restroom Mark Stanzel was on his way out. As soon as Defendant entered one of the stalls, he observed a Mountain Dew can sitting on the back of the toilet. Before Defendant had time to turn around and sit down on the toilet, Dabney pushed the door open, saw the can, and ordered Defendant to give it to him. According to Defendant, it was Stanzel who had been smoking crack cocaine in the restroom.
 {¶ 7} Defendant subpoenaed a witness, DaJuan Darden, who failed to appear. Defendant asked the court to issue a warrant for Darden's arrest. The court denied the request.
 {¶ 8} At the conclusion of the trial the jury found Defendant guilty as charged. The trial court subsequently sentenced Defendant to seven months imprisonment.
 {¶ 9} Defendant has timely appealed to this court from his conviction and sentence. He presents six assignments of error for our review.
 First Assignment of Error {¶ 10} "Appellant was denied his constitutional right to compulsory process for obtaining witnesses when the court refused to enforce a subpoena issued for Dajuan Darden to compel Darden's testimony at appellant's trial."
 {¶ 11} The Sixth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution, guarantees a criminal defendant the right to present witnesses in his or her own behalf and to use the power of the court to compel the attendance of those witnesses, if necessary. This right is a fundamental element of due process of law, and in plain terms is the right to present a defense. Washington v.Texas (1967), 388 U.S. 14; State v. Brown, 64 Ohio St.3d 649,1992-Ohio-19.
 {¶ 12} When a subpoena is left at a witness' usual place of residence, or business location, or place of employment, and the witness has actual knowledge of the subpoena, service of summons has been completed. See: State v. Castle (1994), 92 Ohio App.3d 732; Denovchek v.Trumbull County Bd. of Commissioners (1988), 36 Ohio St.3d 14; Crim.R. 17(D). A witness's failure to obey a duly served subpoena constitutes contempt of court. Castle, supra.
 {¶ 13} On March 7, 2002, Defendant left a subpoena at the home of DaJuan Darden, directing him to appear in court on March 11, 2002, at 1:30 p.m. Darden failed to appear, however, whereupon the following colloquy between defense counsel and the trial court took place:
 {¶ 14} "MR. LOIKOC: . . . Uh . . . we had a witness by the name of DaJuan Darden, D-A-J-U-A-N, last name D-A-R-D-E-N, uh . . . who we had subpoenaed to be a witness for the Defense and he had indicated he was going to be willing to do so.
 {¶ 15} "Uh . . . I made residential service on Saturday on him. Uh . . . I attempted to — to make service on Friday. Uh . . . I made two trips out to his home and he was not there. Uh . . . I left the Subpoena with his father on — on Saturday morning. And, uh . . . I had previously spoken with Mr. Darden and had told him the times that he was to be here.
 {¶ 16} "Uh . . . he has not appeared. I've attempted to contact him. Uh . . . I left word at his home this morning at the change of the Courtrooms that we — we had. I also left word with Judge Sunderland's Bailiffs (sic) and, uh . . . she notified me that he had not appeared down there, because the original Subpoena did indicate that he was to be, uh . . . in Judge Sunderland's Court.
 {¶ 17} "And I've attempted to contact, uh . . . his home again. Uh . . . I asked if he was present and whoever answered the phone then hung — said: "No." They hung up and, uh . . . I called back and all I got was an answering machine.
 {¶ 18} "Uh . . . so like I said, we do — we do have a witness that he have subpoenaed, but he's not present and I'm not really sure how to . .
 {¶ 19} "JUDGE McCRACKEN: You really don't know that he's actually received the Subpoena? I mean yo — other — you had a verbal conversation with him, but . . .
 {¶ 20} "MR. LOIKOC: I . . .
 {¶ 21} "JUDGE McCRACKEN: . . . you don't' know whether he's been actually served with the Court papers?
 {¶ 22} "MR. LOIKOC: Yeah, I don't know whether his father gave him the subpoena. I — his father indicated to me that he would give it to him and, uh . . . this was on Sa — as I said, Saturday morning.
 {¶ 23} "JUDGE McCRACKEN: And that's your only witness?
 {¶ 24} "MR. LOIKOC: Aside from Mr., uh . . . Brock himself."
 {¶ 25} At the trial court's suggestion, defense counsel proceeded and called Defendant on the witness stand. The court indicated to defense counsel that if he could locate Darden during the evening recess, he could call Darden as a witness the following morning.
 {¶ 26} The next morning the following colloquy occurred between defense counsel and the trial court:
 {¶ 27} "MR. LOIKOC: Mr. Darden was supposed to appear at 1; 30 yesterday. He did not appear in Court. Uh . . . I was able to contact the father last night and he confirmed that Mr. Darden had, in fact received the Subpoena, that he had given it to him. He did not know why he had not appeared. And, uh . . . I asked him if he spoke with Mr. Darden, to ask him to come in this morning. He is not here this morning either.
 {¶ 28} "Uh . . . we would request the Court's assistance in compelling his attendance.
 {¶ 29} "* * *
 {¶ 30} "JUDGE McCRACKEN: Well, the Court's gonna overrule that request. I don't feel there's sufficient information for the Court to find that — that he was actually received it since it wasn't given to him personally, it was given to a — a third person.
 {¶ 31} "MR. LOIKOC: Very well, Your honor thank you."
 {¶ 32} Defense counsel then proffered for the record what Darden's testimony would have been had he obeyed the subpoena and appeared at trial:
 {¶ 33} "Uh . . . it would be that at the time of the incident in question, he was in the — he was also a client of the Volunteers of America, uh . . . facility here in Dayton, Ohio; that he was in the restroom in question; uh . . . that Mr. Brock came in, uh . . . as Mr. Darden was washing his hands; that, uh . . ., uh . . . Mr. — Brock waved to him, and, uh . . . at that point, Mr. — Mr. Stanzel came out of a stall that, uh . . . Mr. Brock came into the restroom, uh . . . Mr. Darden had smelled, uh . . . both tobacco burning and crack burning; uh . . . and that he is familiar with the — the smell of crack; that it was coming from the back of the — of one of the stalls.
 {¶ 34} "Mr. Stanzel came out of the stall, walked out of the restroom, uh . . . Mr. Darden also walked out of the restroom and sat down in a chair in the hallway that, uh . . . and just almost immediately after Mr. Darden walked out and sat down, Mr. Dabney walked into the restroom; uh . . . that this was just a matter of a few seconds and that during that time, Mr., uh . . . Brock would not have had any time to smoke any cocaine or any crack cocaine.
 {¶ 35} "He would also testify that, uh . . . that Mr. — that there were other people present in the hallway; that they were sitting around eating subs that had been supplied by, uh . . . of the clients who had worked at a pizza place; and that, uh . . . almost immediately after Mr. Stanzel left the restroom, he assaulted Mr. White, uh . . . because Mr. White was supposed to be Mr. Stanzel's lookout to ensure that he wasn't interrupted while he was smoking cocaine."
 {¶ 36} Defendant argues that he was denied his rights to compulsory process and a fair trial when the court refused his request to compel the attendance of the subpoenaed defense witness, DaJuan Darden.
 {¶ 37} The trial court's stated reason for refusing to compel Darden's attendance at the trial, because the evidence was insufficient to demonstrate that Darden actually received the subpoena, is not in our view supported by this record. To the contrary, defense counsel's representations to the trial court demonstrate that counsel left the subpoena for Darden with Darden's father, at Darden's residence, and that the father, in fact, gave the subpoena to Darden. This is sufficient to demonstrate a valid, completed service.
 {¶ 38} The State argues that any error by the trial court in failing to enforce the subpoena was harmless because Darden's testimony would not have exonerated Defendant, in light of Dabney's testimony. This argument misses the mark.
 {¶ 39} This case presented the jury with a classic credibility contest; two irreconcilable versions of the events presented by Dabney and Defendant, with the outcome dependent upon whom the jury believed. Defense counsel's proffer demonstrates that Darden's testimony, if believed, would corroborate Defendant's version of the events. Thus, if the trial court did commit error in not enforcing the subpoena for Darden, we could not say in this case that the error did not affect Defendant's substantial rights, or that there is no reasonable possibility that the error contributed to Defendant's conviction.
 {¶ 40} Defendant unquestionably had the right to invoke the trial court's power to compel the attendance of any defense witness who had been duly served with a subpoena. Defendant's request to the trial court for "assistance in compelling his (Darden's) attendance," presented the court with two options. First, the court could have issued a warrant for Darden's arrest, because failure to obey a subpoena constitutes an act in contempt of court. This appears to be the remedy Defendant had in mind. In the middle of a jury trial, that remedy would require the court to continue the trial and send the jury home until the witness was arrested and brought into court. It is sheer speculation as to how long it might take to locate the missing, recalcitrant witness, be it a few hours, a few days or even longer. Such a remedy, therefore, is an inefficient and undesirable way to administer justice. The trial court clearly did not commit error, much less abuse its discretion, when it declined to pursue this course of conduct to remedy Darden's failure to obey the subpoena.
 {¶ 41} The other option available to the trial court was to declare a mistrial because the missing witness was reasonably required for presentation of a defense. Defendant did not ask for that relief, however. Had he done so, after the court had indicated that it was not willing to issue an arrest warrant for Darden, the court's denial of a motion for a mistrial might well have constituted an abuse of discretion. Having failed to request that form of relief, however, Defendant waived his right to argue on appeal that he was prejudiced by Darden's failure to appear and/or the trial court's refusal to issue an arrest warrant for Darden and continue the trial until he could be found.
 {¶ 42} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 43} "The trial court erred in admitting the Mountain Dew can into evidence because of an unreliable chain of custody."
 {¶ 44} Dabney removed the Mountain Dew can from Defendant's possession after observing Defendant use it as a makeshift crack pipe in the restroom. Dabney put the can in a control booth where another staff member, Mr. Hobart, could watch over it until police arrived. At trial, Dabney identified State's Exhibit 1 as a Mountain Dew can fitting the description and features of the one he took from Defendant.
 {¶ 45} Officer Chris Smith identified State's Exhibit 1 at trial as the Mountain Dew can given to him by Dabney. After field testing the residue on the can, Officer Smith placed it in a Dayton Police Department evidence envelope, sealed it, marked it, and put it in the property room.
 {¶ 46} Gary Shaffer, a forensic chemist with the Miami Valley Regional Crime Laboratory, identified State's Exhibit 1 at trial as a can he received in a sealed envelope from Dayton police. After testing the item, Shaffer placed it in an evidence envelope, sealed it, marked it, and returned it to the property room of the crime lab.
 {¶ 47} Defendant argues that because Mr. Hobart did not testify at trial and some of the other residents at Volunteers of America may have had access to the control booth where the can was placed pending the arrival of police, there is a break in the chain of custody, and alteration of the can could have occurred — someone could have put cocaine residue on it. We are not persuaded.
 {¶ 48} A strict chain of custody is not necessarily required in order for physical evidence to be admissible. State v. Richey,64 Ohio St.3d 353, 1992-Ohio-44. Authentication is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Evid.R. 901(A). The evidence presented by the State at trial clearly demonstrates that State's Exhibit 1 is the Mountain Dew can transformed into a makeshift crack pipe that Dabney took from Defendant. The possibility of contamination goes to the weight, not the admissibility of that evidence. Richey, supra.
 {¶ 49} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 50} "The trial court erred in overruling appellant's Rule 29 motion."
 {¶ 51} When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261. The motion will be granted only when reasonable minds could only conclude that the evidence fails to prove all of the elements of the offense. State v. Miles (1996), 114 Ohio App.3d 738.
 {¶ 52} Defendant was found guilty of drug abuse, "knowingly possessing crack cocaine," in violation of R.C. 2925.11(A). "Knowingly" is defined in R.C. 2901.22(B):
 {¶ 53} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 54} A Crim.R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 55} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 56} Dabney testified at trial that he smelled the odor of burning crack cocaine and observed Defendant holding a Mountain Dew can that had been transformed into a make-shift crack pipe, torching it with a lighter and inhaling vapors from the burning substance. Laboratory tests revealed that the can contained crack cocaine residue. Viewing that evidence in a light most favorable to the State, a rational trier of fact could find that all of the essential elements of drug abuse have been proven beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence, and the trial court properly overruled his Crim.R. 29 motion for acquittal.
 {¶ 57} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 58} "The defense was prejudiced through the court's failure to dismiss juror Springhart for cause pursuant to defense counsel's request."
 {¶ 59} Defendant argues that the trial court abused its discretion when it refused his request to remove a prospective juror, Ms. Springhart, for cause.
 {¶ 60} Ms. Springhart indicated during voir dire that her judgment in this case might be clouded by the fact that her brother-in-law was murdered in a drug related incident in 1972, and authorities had never apprehended the person responsible. When defense counsel challenged Ms. Springhart for cause, the following colloquy occurred between the trial court and Ms. Springhart:
 {¶ 61} "JUDGE McCRACKEN: Ms. Springhart, do you feel that you — you could lay this past exper — I mean, everybody comes into Court with past experiences and the thing is, can you lay those experiences aside and base any decision that you would hear in the Courtroom today solely upon the testimony and evidence received from the — the Witness Stand?
 {¶ 62} "MS. SPRINGHART: [Inaudible]
 {¶ 63} "JUDGE McCRACKEN: Okay. Overruled."
 {¶ 64} Defendant subsequently used one of his peremptory challenges to remove juror Springhart. Defendant now argues that because he was forced to exhaust all of his peremptory challenges, the trial court's erroneous ruling on his challenge for cause was prejudicial.State v. Williams, 79 Ohio St.3d 1, 1997-Ohio-407.
 {¶ 65} A person called as a prospective juror may be challenged for cause if that person demonstrates bias toward the defendant. R.C.2945.25; Crim.R. 24(B). A trial court's ruling on a challenge for cause will not be disturbed on appeal absent an abuse of discretion. State v.Schiebel (1990), 55 Ohio St.3d 71. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v.Adams (1980), 62 Ohio St.2d 151.
 {¶ 66} The record presently before us reflects that juror Springhart's answer to the court's inquiry about whether she could lay her personal experiences aside and be a fair and impartial juror in this case was inaudible to the court reporter. Therefore, we do not know what the substance of her response was. Defendant failed to utilize the provisions available in App.R. 9 to supplement the record in order to show how juror Springhart answered the court's inquiry. In the absence of a record that affirmatively demonstrates error, we must presume the regularity and validity of the trial court's proceedings. Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197.
 {¶ 67} On the record before us we must presume that juror Springhart answered in the affirmative when the court inquired if she could lay her personal experiences aside and decide this case solely upon the evidence presented. That response would preclude the court from disqualifying Springhart for bias. See Crim.R. 24(B)(9). The record before us does not exemplify the claimed error; that the court erroneously denied Defendant's challenge for cause. No abuse of discretion has been demonstrated.
 {¶ 68} The fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR {¶ 69} "Appellant was denied his right to effective assistance of counsel and a fair trial."
 {¶ 70} Defendant argues that his trial counsel rendered ineffective assistance by failing to challenge a potential juror, Mr. Stupp, for cause.
 {¶ 71} Mr. Stupp had attached a typed statement to his juror questionnaire indicating that he would not be able to give someone a fair trial due to his thoughts on the system, presumably the criminal justice system, because his father was shot and killed in 1976 and the person responsible had never been caught. When defense counsel questioned Mr. Stupp during voir dire about this statement, Mr. Stupp reaffirmed that he would be reluctant to give someone a fair trial and that he might be prejudiced. Defense counsel never challenged Mr. Stupp for cause. Defense counsel did use a peremptory challenge to remove Mr. Stupp from the jury. Defendant exercised all the peremptory challenges he was allowed by Crim.R. 24(C) in selecting the jury that returned a guilty verdict against him.
 {¶ 72} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court set forth the standard for judging claims of ineffective assistance of trial counsel:
 {¶ 73} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
 {¶ 74} "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 {¶ 75} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Syllabus, 2. Accord: State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 76} We were confronted with a somewhat similar set of facts inMcGarry v. Horlacher (2002), 149 Ohio App.3d 33. There, the trial court denied a plaintiff's challenge for cause during voir dire. The plaintiff then exercised a peremptory challenge to excuse the juror concerned, and in the process exhausted her peremptory challenges. We found that the trial court erred when it denied the challenge for cause. We further held that "[t]his was prejudicial to McGarry because it forced her to use a peremptory challenge on a prospective juror who should have been excused for cause, giving her fewer peremptory challenges than Civ.R. 47(B) provides and fewer than Horlacher was given." Id., at p. 39.
 {¶ 77} Unlike McGarry, there was no error on the court's part here. Instead, if an error occurred at all it was defense counsel's, in failing to challenge Mr. Stupp for cause. The issue presented is whether ineffective assistance is demonstrated thereby. The potential prejudice, as in McGarry, necessarily arises from using a peremptory challenge to excuse Mr. Stupp, when he might have been removed for cause, diminishing the number of peremptory challenges Defendant could use otherwise.
 {¶ 78} Crim.R. 50(A) provides that an error which "does not affect substantial rights shall be disregarded" as harmless error. However, some errors are structural in nature; that is, they ". . . are so intrinsically harmful as to require automatic reversal (i.e., `affect substantial rights') without regard to their effect on the outcome."State v. Hill, 92 Ohio St.3d 191, 196, 2001-Ohio-141, quoting Neder v.United States (1999), 527 U.S. 1, 7, 119 S.Ct. 1827, 1833,144 L.Ed.2d 35, 45.
 {¶ 79} We applied the structural error doctrine in McGarry, albeit in a civil case. In consequence, we were not required to find that the plaintiff's substantial rights were affected; that is, that she was actually prejudiced as a result of having fewer peremptory challenges to exercise.
 {¶ 80} Ineffective assistance of counsel claims "are subject to a general requirement that the defendant affirmatively prove prejudice."Strickland, at p. 693. The requirement is implicit in the finding thatStrickland requires for reversal, which is that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. That outcome-sensitive standard precludes a structural error analysis, which is unconcerned with the outcome that may have resulted from the error alleged.
 {¶ 81} Here, even though the Defendant exhausted his peremptory challenges, the record contains no affirmative proof of any resulting prejudice. Such proof would involve a showing that, had the court excused Mr. Stupp for cause on the motion that defense counsel failed to make, Defendant would then have used the peremptory challenge he exercised to excuse Mr. Stupp to instead excuse another juror. Even that is insufficient to show actual prejudice. One would have to find that the next juror called after that would likely have produced a verdict favorable to Defendant, which is a wholly speculative proposition.
 {¶ 82} On this record, we cannot find that Defendant was so prejudiced by his counsel's failure to challenge Mr. Stupp for cause that Defendant was denied the effective assistance of counsel, in violation of his Sixth Amendment rights. The fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR {¶ 83} "The trial court abused its discretion and deprived appellant of due process through sentencing."
 {¶ 84} In determining how best to comply with the purposes and principles of felony sentencing set out in R.C. 2929.11, a trial court must consider and weigh the seriousness and recidivism factors in R.C2929.12(B), (C), (D), and (E). See: R.C. 2929.12(A).
 {¶ 85} In imposing sentence in this case the trial court indicated that it had considered the presentence investigation report, the purposes and principles of felony sentencing, and the seriousness and recidivism factors in R.C. 2929.12. The court found that none of the "more serious" factors in R.C. 2929.12(B) apply. The court also found that none of the "less serious" factors in R.C. 2929.12(C) apply.
 {¶ 86} Defendant argues that this latter finding by the court is contrary to law because it is clear from the evidence that he did not "cause or expect to cause physical harm to any person." Thus, the "less serious" factor in R.C. 2929.12(C)(3) does apply to Defendant. Moreover, Defendant suggests that because he did not cause physical harm to any person, none of the imprisonment factors in R.C. 2929.13(B)(1) were present, and thus the trial court was required to sentence Defendant to community control for this fifth degree felony. See: R.C. 2929.13(B)(2)(a) and (b).
 {¶ 87} In State v. Foster (December 6, 2002), Montgomery App. No. 19197, we recently held that the mere fact that the trial court does not find that any of the imprisonment factors in R.C. 2929.13(B)(1) apply to defendant does not preclude the court from imposing a prison term for a fourth or fifth degree felony. Where, as here, the court finds after considering and weighing the seriousness and recidivism factors in R.C.2929.12 that a prison term is consistent with the purposes and principles of felony sentencing, and that defendant is not amenable to a community control sanction, the court retains discretion to impose a prison term should it choose to do so. Id. The trial court is not required to make any specific findings in order to demonstrate that it has considered the seriousness and recidivism factors in R.C. 2929.12. State v. Arnett,88 Ohio St.3d 208, 2000-Ohio-302.
 {¶ 88} The trial court in this case found several factors that indicate Defendant is "likely to commit future crimes." At the time of committing this offense Defendant was on parole. R.C. 2929.12(D)(1). Defendant has a long history of criminal convictions. R.C. 2929.12(D)(2). Past attempts at rehabilitating Defendant have been unsuccessful. R.C.2929.12(D)(3). Defendant has shown no genuine remorse for this offense. R.C. 2929.12(D)(5). Furthermore, the trial court did find that two of the imprisonment factors in R.C. 2929.13(B)(1) apply in this case: Defendant has previously served a prison term, R.C. 2929.13(B)(1)(g), and Defendant committed this offense while on probation, R.C. 2929.13(B)(1)(h). Last, in imposing more than the minimum prison term authorized for this offense the trial court found that the shortest prison term would demean the seriousness of this offense and not adequately protect the public. R.C.2929.14(B).
 {¶ 89} On this record, we cannot clearly and convincingly find either that the record does not support the court's findings under the relevant statutes or that the sentence is otherwise contrary to law. Thus, we cannot disturb the trial court's sentence. R.C. 2953.08(G)(2);Foster, supra.
 {¶ 90} The sixth assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. concurs.